No. 91-512

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

IN RE THE MARRIAGE OF

JANET D. PEETZ,

Petitioner and Appellant,

and

GARY R. PEETZ,

Respondent and Respondent.

FILED

APR 21 1992

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:  District Court of the Fourth Judicial District,
In and for the County of Ravalli,
The Honorable Ed McLean, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Gail M. Haviland, Worden, Thane & Haines,
Missoula, Montana

For Respondent:

John D. Greef, Attorney at Law,
Hamilton, Montana

Submitted on Briefs:  January 16, 1992

Decided:  April 21, 1992

Filed:

Clerk

Justice William E. Hunt, Sr., delivered the opinion of the Court.

Petitioner Janet D. Peetz appeals from Findings of Fact and Conclusions of Law and Decree of Dissolution of the Fourth Judicial District Court, Ravalli County, which divided and distributed the marital estate, and ordered petitioner to purchase certain real property from respondent Gary R. Peetz, or sell the property. Petitioner also argues that the court erred in the amount of maintenance granted, in not awarding her attorney fees, and in not ordering respondent to provide her with health insurance through his place of employment.

We affirm.

Petitioner raises several issues relating to the division of marital property before this Court. However, we will frame the issues as follows:

1. Did the District Court err in the division of the marital estate?

2. Did the District Court err in ordering petitioner to purchase certain real property from respondent within 15 days of entry of the decree, and ordering its sale if the petitioner did not purchase the property?

3. Did the District Court err in not requiring respondent to provide petitioner with health insurance coverage through his place of employment?

4. Did the District Court err in granting petitioner a maintenance award of $600 per month for a period of two years?

2

5. Did the District Court err in not awarding petitioner her attorney fees?

Petitioner and respondent had been together since October 1981, and were married on August 12, 1983, in Reno, Nevada. At the time of the marriage, petitioner represented to respondent that she was 43 years old and wrote that age on her marriage application. Petitioner was actually 50 years old at the time of marriage. She had also represented to respondent that she could bear one or two children. Respondent discovered these facts for the first time just a few weeks before the parties separated. At the time of dissolution, petitioner was 58 years old.

Prior to the marriage, petitioner received approximately $42,000 from a previous divorce settlement. She owed a tax obligation of approximately $3700, and an accountant bill of $1300. Both obligations were paid from the respondent's earnings after the marriage.

In September 1982, petitioner purchased a small tract of land located near Victor for $85,000, and made down payment on the property of $20,000. On February 7, 1983, petitioner also made a prepayment on the land contract which came from a repayment of a $5000 loan, along with $6671 from a joint savings account, which money was deposited from respondent's earnings. In 1988, petitioner received a $14,000 inheritance from her mother.

Respondent's estate at the time of the marriage included personal belongings, a vehicle, motorcycle, travel trailer, and a savings account from payroll contributions. Respondent worked as

3

a truck driver full time, with occasional layoffs, from the beginning of the marriage until 1986, when he suffered an industrial accident which resulted in a disc problem in his back that continues to restrict his motion and causes considerable pain. He received approximately $30,000 in workers' compensation benefits as result of the injury, and used $17,845 to pay off the remaining debt on the ranch in 1988. Other moneys respondent received during the marriage were a gift from his parents of $2500 which was placed in the parties' joint savings account, and $3300 resulting from a sale of his motorcycle and travel trailer. The proceeds of this sale were also deposited in the parties' savings account and used for living expenses. Respondent returned to work as a truck driver in May 1990 and had a monthly net earning capacity of approximately $2863. However, due to medical restrictions placed upon him, he is now limited to an average weekly wage of approximately $480 to $550.

In December 1989, the parties sold the Victor property for $102,200 in cash. Using the proceeds of this sale, the parties purchased a small ranch with two houses on Coal Mine Lane near Darby. Currently petitioner derives some income from renting one of the houses. The property is held jointly by the parties.

The parties accumulated several items of personal property which we need not go into in detail. Prior to and during the marriage, petitioner maintained a horse breeding business/hobby which operated at a loss. The parties accumulated 25 to 28 horses during the marriage. Seven of those horses were owned by

4

petitioner at the time of the marriage, 14 were offspring of the original seven, and four were purchased by petitioner with her inheritance. The stipulated value of the horses is $15,000. Petitioner plans to continue operating her horse breeding operation after the dissolution of the marriage.

Upon hearing the testimony of the parties and examining the evidence presented by both parties, the District Court issued its Findings of Fact and Conclusions of Law and Decree on June 18, 1991. The court found that the total value of the marital estate was $152,602. The court also held that both parties contributed roughly equally to the marital estate and divided and distributed the assets as follows:

WIFE
1.  reimbursement for down payment less          $37,500
$5,000 tax and accounting obligation
paid by husband
2.  reimbursement for investment                   5,000
on February 7, 1983
3.  less credit to husband for 1/2 of            - 8,839
extra value of personal property
distributed to Wife
4.  reimbursement for taxes and insur.
paid since the separation of the parties
5.  50% of the remaining equity

Total - $33,661 plus 50% of the remaining sales proceeds.

HUSBAND
1.  reimbursement for work comp                  $17,845
prepayment
2.  reimbursement for investment on                6,671
February 7, 1983
3.  plus credit for 1/2 of extra value             8,839
of personal property distributed to
wife
4.  reimbursement for taxes and insur.
paid since the separation of the parties
5.  50% of the remaining equity

Total - $33,355 plus 50% of the remaining sales proceeds.

5

Petitioner received $22,640 and respondent received $4962 in personal property. The court ordered respondent to pay petitioner monthly maintenance of $600 for two years. The court did not order respondent to provide health insurance, and did not award attorney fees. It is from this decree that petitioner appeals to this Court.

I

Did the District Court err in the division of the marital estate?

Petitioner contends that the court's distribution of the marital estate was arbitrary, and lists several findings by the court she claims resulted in substantial injustice. Petitioner's specific contentions of error include: (1) crediting the respondent's lump sum workers' compensation settlement received during the marriage as an interest in real property and not including it as the marital estate; (2) crediting the respondent's interest in the real property for $6671; (3) crediting respondent for one-half value of the personal property distributed to petitioner to his interest in the real property; (4) deducting from the amount of money credited to petitioner as her interest in real property $5000 for tax and accounting obligations allegedly paid by respondent; (5) the distribution of the respondent's credit union account; and (6) allocating a satellite dish to petitioner as personal property because petitioner claims it is a fixture to the real property. In addition to the above listed contentions, petitioner claims that the court erred in its distribution of its

6

marital estate because she brought substantially more property into the marriage than respondent and that the court did not consider the factors established by § 40-4-202, MCA.

Section 40-4-202, MCA, is the statute which establishes a guideline for the district courts to follow when distributing the assets of the marital estate. Section 40-4-202, MCA, reads, in pertinent part:

> (1) In a proceeding for dissolution of a marriage . . . or division of property following a decree of dissolution of marriage . . . the court, without regard to marital misconduct, shall . . . finally equitably apportion between the parties the property and assets belonging to either or both, however and whenever acquired and whether the title thereto is in the name of the husband or wife or both. In making apportionment, the court shall consider the duration of the marriage and prior marriage of either party; the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, and needs of each of the parties; custodial provisions; whether the apportionment is in lieu of or in addition to maintenance; and the opportunity of each for future acquisition of capital assets and income. The court shall also consider the contribution or dissipation of value of the respective estates and the contribution of a spouse as a homemaker or to the family unit. In dividing property acquired prior to the marriage . . . the court shall consider those contributions of the other spouse to the marriage, including:
>
> . . . .
>
> (b) the extent to which such contributions have facilitated the maintenance of this property . . . . [Emphasis added.]

Both parties have correctly stated this Court's standard of review over the District Court's division of the marital estate:

> "In dividing property in a marriage dissolution the district court has far reaching discretion and its judgment will not be altered without a showing of clear abuse of discretion. The test of discretion

7

> is whether the trial court acted arbitrarily without employment of conscientious judgment or exceeded the bounds of reason resulting in substantial injustice."

In Re the Marriage of Gallinger (1986), 221 Mont. 463, 468-69, 719 P.2d 777, 780, (quoting In Re the Marriage of Wessel (1986), 220 Mont. 326, 333, 715 P.2d 45, 50). Thus, our role in reviewing the district court's findings of fact and conclusions of law in a decree of dissolution is a limited one.

As we have stated previously, premarital property is a factor the court shall consider, however, the court is not required to restore the parties to their premarital status. In Re the Marriage of Tonne (1987), 226 Mont. 1, 4, 733 P.2d 1280, 1283. Both parties contributed significantly toward the marital estate. Petitioner brought into the marriage her equity in the Victor property, as well as miscellaneous personal property, an inheritance, and other cash. Respondent facilitated the maintenance of the marital estate and maintained the parties' lifestyle through depletion of his savings, his earnings as a truck driver, and his workers' compensation benefits.

We agree that petitioner and respondent offer conflicting testimony as to who contributed what and when. In resolving conflicts in testimony, this Court defers to the district court because:

> The trial court sits in the best position to judge the credibility of the testimony proffered by the parties to a dissolution action. Because the District Court had the opportunity to observe the demeanor of the witnesses, we defer to its resolution of any conflicting evidence.

8

In Re the Marriage of Porter (1991), 247 Mont. 395, 398, 807 P.2d 192, 194. It appears the District Court resolved most of the conflicting testimony in favor of respondent. Because the court observed the demeanor and character of the witnesses, and because there is substantial credible evidence to support the court's findings, we hold that the District Court did not abuse its discretion in the distribution of the marital estate stated above.

Petitioner also contends that the division of the property was inequitable because the court did not consider her age, occupation, respective employment history, health, and skills, as required by § 40-4-202, MCA. Petitioner was 58 years old at time of trial. Prior to the marriage she worked as a waitress and as a secretary. Although she expressed concern over her lack of computer skills necessary for today's secretary, petitioner testified she could still work if required. Although petitioner testified she suffered from gallbladder problems, the court found that petitioner was in good health. The court held that petitioner's only source of income at the time of dissolution was rental income from one of the houses on the Darby property. We hold that the District Court properly considered the factors listed in § 40-4-202, MCA, in distributing the marital asset, and did not abuse its discretion.

## II

Did the District Court err in ordering the petitioner to purchase the Darby property within 15 days of the decree and ordering its sale if the petitioner did not purchase the property?

In the decree of dissolution, the court granted petitioner 15 days to purchase the Darby property for $57,984. If she failed to do so, the parties were ordered to sell the property for $125,000, unless otherwise agreed upon. Petitioner argues that she could earn enough income from the breeding and sale of horses and rent to pay off the respondent's share of the marital estate. The horse breeding business cost petitioner $550 per month. The rental income of the second house was $250. Apparently, the horse breeding business and rent cannot generate enough income to pay respondent's share of the marital estate. We hold that the District Court did not abuse its discretion in ordering the Darby property to be sold.

### III

Did the District Court err in not requiring the respondent to provide health insurance coverage for petitioner through his place of employment?

Petitioner contends that due to her age and gallbladder problems, the court should have ordered respondent to provide health insurance coverage for her through his place of employment. We disagree.

If the property is sold at $125,000, as ordered by the court, petitioner will receive approximately $62,653 from the sale of the real property, plus $22,640 in personal property. The division of the marital estate should provide petitioner with sufficient assets to provide for her health care. We hold that the District Court did not abuse its discretion.

10

Did the District Court err in granting petitioner a maintenance award of $600 per month for a period of two years?

Section 40-4-203(1) and (2), MCA, states that the district court may grant maintenance for either spouse only if it finds that the spouse requesting maintenance:

      (a) lacks sufficient property to provide for his reasonable needs; and

      (b) is unable to support himself through appropriate employment . . .

      (2) The maintenance order shall be in such amounts and for such periods of time as the court deems just, without regard to marital misconduct, and after considering all relevant facts including:

      (a) the financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently . . .

      (b) the time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;

      (c) the standard of living established during the marriage;

      (d) the duration of the marriage;

      (e) the age and the physical and emotional condition of the spouse seeking maintenance; and

      (f) the ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance.

This Court's standard of review on the issue of maintenance depends on whether the district court has properly considered the factors listed in § 40-4-203, MCA, and whether there is substantial credible evidence to support the findings. In Re the Marriage of

11

Cannon (1986), 223 Mont. 42, 44, 723 P.2d 951, 953. The District Court awarded petitioner maintenance of $600 a month for two years. Petitioner testified that she could return to clerical work, but voiced concerns about her lack of skill in computers. In addition, she stated she could be self-supporting in three to four years. The District Court awarded maintenance for two years, which it concluded should be a sufficient amount of time for her to achieve self-support through education, training, or other employment. We hold the District Court properly considered the factors in § 40-4-203, MCA, and there was substantial credible evidence to support the amount of maintenance.

V

Did the District Court err in not awarding petitioner her attorney fees?

Section 40-4-110, MCA, permits the district court to order the parties to pay attorney fees in dissolution proceedings. It states:

> The court from time to time, after considering the financial resources of both parties, may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under chapters 1 and 4 of this title and for attorney's fees, including sums for legal services rendered and costs incurred prior to the commencement of the proceeding or after entry of judgment. The court may order that the amount be paid directly to the attorney, who may enforce the order in his name.

The district court is given considerable discretion in the award of attorney fees. Gallinger, 719 P.2d at 782. Thus, we will not overturn a district court's refusal to award attorney fees

12

absent an abuse of discretion. Gallinger, 719 P.2d at 783. In this instance, petitioner has adequate resources from the division of the marital estate and award of maintenance to pay her own attorney fees. We hold that the District Court did not abuse its discretion in not ordering respondent to pay attorney fees.

We affirm.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices