No. 91-465

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

IN RE THE MARRIAGE OF

CHARLENE KAY SCHMITZ,

Petitioner and Appellant,

-vs-

ROGER KEITH SCHMITZ,

Respondent and Respondent.

APPEAL FROM:   District Court of the Fifteenth Judicial District,
In and for the County of Sheridan,
The Honorable M. James Sorte, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Gary Ryder, Attorney at Law, Sidney, Montana

For Respondent:

Loren J. O'Toole, O'Toole & O'Toole, Plentywood,
Montana

Submitted on Briefs:   June 11, 1992

Decided:   November 5, 1992

FILED

NOV -6 1992

Filed: *Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

The petitioner, Charlene Kay Schmitz, appeals from the property distribution in this marital dissolution action as determined by the District Court of the Fifteenth Judicial District, Sheridan County. We affirm in part and reverse in part.

The restated issues are as follows:

1. Was the notice of appeal timely filed?

2. Did the District Court err by including petitioner's workers' compensation benefits in the marital estate?

3. Did the District Court err in its findings of fact and conclusions of law?

Roger Keith Schmitz and Charlene Kay Schmitz were married on June 18, 1971. Neither party brought any substantial assets to the marriage. Prior to the marriage, Roger served in the military and completed one year of automotive schooling. Charlene had recently graduated from high school.

In 1976, Roger purchased, by means of a contract for deed, a 50% interest in farm/ranch property in Sheridan County, Montana from his uncle. Roger's father, Joe Schmitz owns the other 50% interest. Both Charlene and Roger were active in farming and ranching during the 19 1/2 years of their marriage. The contract for deed was paid off in 1990. Charlene was very active in all aspects of the farm/ranch operation until the time of her injury. The parties also raised two sons during this time.

Charlene began working in 1984 as a part-time nurses-aide at the Culbertson Nursing Home. In February 1986, Charlene suffered

2

a work-related back injury which prevented her from working at the nursing home and limited her activities on the ranch. In the spring of 1986, Charlene was classified as permanently totally disabled for workers' compensation purposes and began receiving monthly compensation payments of $358.76. These payments continued throughout the time of trial. Because the payments are subject to a 10-year limitation, Charlene will no longer qualify for workers' compensation benefits after May 1996.

Charlene presently attends Idaho State College with assistance provided under a plan for displaced homemakers. Roger has continued to operate the farm/ranch operation.

In addition to the real property purchased from Roger's uncle, the parties accumulated livestock, farm and ranch equipment, and numerous other items of personal property. The parties were essentially debt-free until 1987, when they borrowed $80,005.00 from Security State Bank in Plentywood to construct a new residence on the farm. In its Findings of Fact, Conclusions of Law and Order dated May 23, 1991, the District Court awarded most of the marital property to Roger. Roger received the real property, the house located on his father's land, which was built by the parties, all livestock, all farm equipment, and numerous other items of personal property. Charlene received $25,000.00 in cash, a 1982 Citation valued at $800.00, and her workers' compensation benefits with a present value of $21,127.80, as of the trial date. Roger was ordered to pay the debts associated with the property he received and Charlene was ordered to pay $4,400.00 in debts she incurred as

3

living expenses after leaving the family home and prior to the trial. Roger was awarded physical custody of the one minor child, who is now 18 years of age.

## I.

Was the notice of appeal timely filed?

Roger contends that the notice of appeal in this case was not filed on time. The resolution of this issue hinges upon the initial period under Rule 59(b), M.R.Civ.P., which provides:

> **Time for motion.** A motion for a new trial shall be served not later than 10 days after service of notice of the entry of the judgment.

Because notice of entry of judgment was served by mail, three days are added under Rule 6(e), M.R.Civ.P, which provides:

> **Additional time after service by mail.** Whenever a party has the right or is required to do some act . . . within a prescribed period after the service of a notice . . . and the notice or paper is served upon the party by mail, 3 days shall be added to the prescribed period.

Roger contends that adding three days to the prescribed period under Rule 59(b) increases the time to a total of thirteen days and, therefore, the exclusion of Saturdays, Sundays and holidays provided for under Rule 6(a), M.R.Civ.P., cannot apply. Rule 6(a), M.R.Civ.P., provides:

> In computing any period of time prescribed or allowed by these Rules, . . . the day of the act, event . . . is not to be included. . . . When the period of time prescribed or allowed is less than 11 days, intermediate Saturdays, Sundays and holidays shall be excluded in the computation.

We conclude that the prescribed period referred to in the foregoing Rule includes the ten day period allowed for filing a motion under Rule 59(b), M.R.Civ.P., with the result that

4

intermediate Saturdays, Sundays and holidays are excluded from the computation. The District Court granted Charlene and Roger Schmitz a dissolution on May 23, 1991. Roger mailed a notice of entry of judgment to Charlene's attorney on May 29, 1991. In civil cases, the notice of appeal must be filed within thirty days of the date of the entry of judgment. Rule 5(a), M.R.App.P. Charlene filed a motion for new trial and a motion to amend the court's findings under Rules 59(a) and 60(b), M.R.Civ.P., which extends the time for filing the appeal.

Rule 59(b), M.R.Civ.P., provides that a Rule 59(a) motion for a new trial must be filed within 10 days after service of notice of entry of judgment. Here the notice of entry of judgment was mailed on May 29, 1991. Charlene filed her Rule 59(a) motion for a new trial on June 17, 1991. The day of mailing is excluded under Rule 6(a), M.R.Civ.P. The combined total of days allowed under Rule 59(b), M.R.Civ.P. and Rule 6(e), M.R.Civ.P. is thirteen days. Counting from May 30 and excluding the intervening Saturdays and Sundays, we determine that the last day for filing a Rule 59(a) motion was June 17, 1991, the date Charlene filed her motion for a new trial.

We conclude that Charlene filed her appeal on time.

II.

Did the District Court err by including petitioner's workers' compensation benefits in the marital estate?

Charlene receives $358.76 per month in workers' compensation benefits for an injury classified as a "permanent total

5

disability." She will receive these payments until May 1996. Roger presented testimony by a certified public accountant that the present value of Charlene's future benefit payments at the time of trial was $21,127.80. This figure was included as marital property and distributed to Charlene.

Charlene contends that to include her future workers' compensation benefits as marital property is error. She argues that to include the figure in the marital estate is speculative because the payments could terminate if she completes the education program or if her physical condition improves.

Charlene presented no evidence at the trial to support any likelihood that she might complete her education program early or that her physical condition could improve. Charlene further contends that her benefits should not be included as part of the marital estate because they are intended to replace her wages. She also argues that including workers' compensation benefits as a marital asset characterizes them as an assignment of the proceeds and therefore is against public policy.

Property which may be properly included in the marital estate is governed by § 40-4-202, MCA, which provides that district courts "shall . . . finally equitably apportion between the parties the property and assets belonging to either or both, however and whenever acquired and whether the title thereto is in the name of the husband or wife or both." (Emphasis supplied.) When the parties are unable to amicably settle their disputes, § 40-4-202, MCA, provides the district courts with equitable powers to divide

6

their property and assets.

In In re the Marriage of Blankenship (1984), 210 Mont. 31, 682 P.2d 1354, we concluded that a workers' compensation award could be a marital asset. In two subsequent cases, where a workers' compensation settlement had been commingled in marital funds we included the same in a marital estate. See In re the Marriage of Bos (1989), 238 Mont. 267, 776 P.2d 841; and In re the Marriage of Jones (1987), 229 Mont. 128, 745 P.2d 350. In In re the Marriage of Cooper (1990), 243 Mont. 175, 179, 793 P.2d 810, 812, we concluded that disability benefits can properly be included in the marital estate as they clearly come within the definition of property "however and whenever acquired." Workers' compensation payments are disability payments. In Cooper, the disability payments were included in the marital estate and awarded to the person receiving the same as is true in the present case.

While § 39-71-743, MCA, prohibits attachment or assignment of workers' compensation benefit payments, we conclude those provisions do not bar classification of workers' compensation awards as marital property.

We hold that the District Court did not err by including the present value of Charlene's future workers' compensation payments as marital property.

### III.

Did the District Court err in its findings of fact and conclusions of law?

The District Court adopted Roger's proposed findings of fact

7

and conclusions of law verbatim. Roger received the couple's entire one-half interest in the farm/ranch property, all farm equipment, all livestock, the family home and miscellaneous items of personal property. Charlene received a 1981 Chevrolet Citation valued at $800.00, $25,000.00 in cash payable within six months of the trial, and her future workers' compensation payments. Roger has responsibility for the bulk of the parties' debts although Charlene was ordered to pay debts in the amount of $4,400.00. Charlene contends that the property valuation and the determination of the amount of debt are not supported by the record and result in an inequitable distribution of the marital estate.

The appropriate standard of review for this issue is whether the District Court's findings of fact are clearly erroneous, as in Interstate Production Credit Assn v. DeSaye (1991), 250 Mont. 320, 323, 820 P.2d 1285, 1287, and cited with approval in In re the Marriage of Eschenbacher and Crepeau (Mont. 1992), 831 P.2d 1353, 49 St.Rep. 393, 394. The standard is the same whether the District Court prepared its own findings or adopted the findings of one of the parties. The wholesale adoption of one party's proposed findings and conclusions is not by itself an automatic basis to vacate a judgment. In re the Marriage of Merry (1984), 213 Mont. 141, 149, 689 P.2d 1250, 1254.

Interstate Production Credit Assn sets forth a three-part test to determine whether the district court's findings are clearly erroneous: (1) the Court will review the record to see if the findings are supported by substantial evidence; (2) if the findings

8

are supported by substantial evidence, the Court determines if the trial court has misapprehended the effect of the evidence; and (3) if substantial evidence exists and the effect of the evidence has not been misapprehended, the Court may still find that "a finding is clearly erroneous when, although there is evidence to support it, a review of the record leaves the court with the definite and firm conviction that a mistake has been committed." Interstate Production Credit Assn, 820 P.2d at 1287.

Substantial evidence is defined as "evidence that a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Barrett v. Asarco, Inc. (1990), 245 Mont. 196, 200, 799 P.2d 1078, 1080, citing Black's Law Dictionary 1281 (5th Ed. 1979); Stanhope v. Lawrence (1990), 241 Mont. 468, 471, 787 P.2d 1226, 1228-29. Charlene specifically contends that the District Court erred by incorrectly calculating the marital debts, by adopting Roger's expert's valuations of specific property, and by failing to properly consider maintenance.

1. The marital debts.

The District Court found that Charlene's debt to Security State Bank was $3,000.00, and that her total personal debt was $4,400.00. By piecing together the fragmented testimony about the bank loans and other debt, it is clear that the District Court's finding is incorrect and that Charlene's personal debt which she incurred for living expenses prior to trial is $8,900.00--$4,500.00 more than the amount in the District Court's finding.

9

The District Court also found that Roger owed his father, Joe Schmitz, $22,600.00 for a tractor and a combine which Roger used as trade-ins on new equipment purchased during the marriage. Roger and his father testified as to the claimed loans. Roger's testimony was inconsistent as to the amount of the loan. He claimed the loan was approximately $22,000.00 and later contradicted that statement. Joe Schmitz testified he thought the loan amount was about $28,000.00 or even more but that he had never made any demand for the money. So far as any payment date is concerned, Roger only testified that there was a verbal agreement that he would pay his father "in due time." The father testified that he had not made a demand for the money and if Roger did not pay it, it would eventually come out of his estate.

In In re the Marriage of Malquist (1987), 227 Mont. 413, 739 P.2d 482, we addressed a similar situation. In Malquist, the wife attempted to include loans from her mother amounting to $42,000,00 as part of the marital debt. We refused to include the debt on the basis of oral testimony alone, stating:

> There is no other evidence in the record, such as a loan agreement, promissory note, canceled checks, or any form of receipt to substantiate the amount, existence or terms of the loans from [the wife's] mother. Proposed findings of fact and conclusions of law must be sufficiently comprehensive to provide a basis for the trial court's decision, and must be supported by the evidence presented.

Malquist, 739 P.2d at 484-85, citing In re the Marriage of Benner (1985), 219 Mont. 188, 193, 711 P.2d 801, 805.

The facts in this case are comparable to Malquist. No evidence was presented of a loan agreement, note, check, form of

10

receipt, or existence or terms of loans.

We therefore conclude that the computation of marital debts was substantially incorrect in that the debt owed by Charlene was $8,900.00 as compared to the $4,400.00 awarded by the court. In addition, we conclude that the amount of $22,600.00 could not properly be included as a debt owed by Roger to Joe Schmitz.

2. The property valuations.

Charlene contends that the District Court erred in adopting Roger's valuations as set forth in his proposed findings of fact. We have reviewed the record with regard to the valuations placed upon the farm and ranch equipment, real property and the home and have concluded that there is substantial evidence in the record to support the District Court's valuation of those items.

In a similar manner, while there is conflicting evidence, we conclude there is substantial evidence to support the District Court's evaluation of the cattle.

A significant portion of the personal property owned by the parties was not valued by the District Court. The findings only referred to these assets as "miscellaneous items of personal property with no established value, being household goods, etc." Both parties introduced evidence relating to this personal property and its values. There is a substantial list of property including such things as a Conklin dealership, Cenex and Nemont stock, capital credits or patronage dividends in GTA, Sheridan Electric Coop and Nemont, a satellite dish, and a water treatment system. Because of the necessity for a remand because of our previously

11

stated conclusions on changes in marital debt owed, we conclude that it will be appropriate on remand for the District Court to more specifically review the items of personal property and value the same. Because of the apparent inability of the parties to divide these assets, we therefore remand so that the District Court may determine the distribution to be made of such personal property.

### 3. Maintenance.

In view of our remand for redetermination resulting from the change in debt, we conclude that it will be appropriate for the court to reconsider the property distribution and the presence or absence of a need for maintenance on the part of Charlene. Such a determination should be made in accordance with §40-4-203, MCA.

In connection with that maintenance determination, we point out that the record indicates that Charlene may be unable to support herself in the near future. In addition to the debt of $8,900.00 as previously described, Charlene has shown an obligation of $10,479.20 for lawyer's professional services and out-of-pocket expenses in connection with this divorce proceeding. As a result, Charlene apparently has approximately $5,000.00 from the cash distribution to assist in application for her needs. We therefore remand to the District Court for reconsideration of the maintenance question at the time it considers the other issues in the proceeding.

We affirm the findings and conclusions of the District Court with the exception of the items specifically mentioned above and

12

with the exception of a potential maintenance award.  We remand for further consideration of these items consistent with this opinion.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

13

November 6, 1992

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

Gary Ryder
Attorney at Law
P.O. Box 1172
Sidney, MT 59270

Loren J. O'Toole
O'Toole & O'Toole
P.O. Box 529
Plentywood, MT 59254-0529

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
Deputy