No. 92-172

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

IN RE THE MARRIAGE OF

JOAN L. BROSS,

       Petitioner and Appellant,

  and

BRIAN ARTHUR BROSS,

       Respondent and Respondent.

APPEAL FROM:   District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable G. Todd Baugh, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          Stephen C. Mackey, Towe, Ball, Enright
          & Mackey, Billings, Montana

      For Respondent:

          John A. Dostal, Brown, Gerbase, Cebull,
          Fulton, Harman & Ross, Billings, Montana

Submitted on Briefs:  August 13, 1992

Decided:  January 12, 1993

Filed:

FILED

JAN 12 1993

CLERK OF SUPREME COURT
STATE OF MONTANA

_____
Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

Joan L. Bross appeals from a decree of dissolution of her eighteen year marriage to Brian Arthur Bross, entered in the Thirteenth Judicial District Court, Yellowstone County, on November 18, 1991. The District Court awarded Joan maintenance in the amount of $3000 per month for five years and $1000 per month thereafter, and provided for termination of this award upon the death of either party, Brian's retirement, or Joan's remarriage or cohabitation in a "marital-like" relationship.

We affirm in part, and reverse in part.

The issues raised by petitioner are restated as follows:

1. Did the District Court err when it granted petitioner a maintenance award of $3000 per month for 5 years, and $1000 per month thereafter?

2. Did the District Court err when it concluded that petitioner's maintenance award would terminate upon her cohabitation in a marital-like manner?

3. Was the District Court's conclusion that maintenance would terminate if petitioner remarried or cohabited in a marital-like manner a violation of her constitutional rights?

Joan and Brian were married on June 9, 1973. At the time of their dissolution on November 18, 1991, Brian was 40 years old and Joan was 39 years old. The couple's two children, Alexandra and Allen, were 13 and 11 years old, respectively, at the time of the dissolution.

2

Joan and Brian met while they were attending Iowa State University in Ames, Iowa and were married after Brian's graduation. Joan withdrew from college because she had been doing poorly, and worked at various jobs during the first few years of their marriage. Her income provided for the couple's support while Brian attended medical school and began his residency. Since their first child was born in 1977, Joan has not been employed outside of the home.

The Bross family moved to Billings in 1982 when Brian began his medical practice as an anesthesiologist. Brian's practice has been successful, and during the three calendar years prior to dissolution, Brian's net disposable income, after payment of taxes and business expenses, averaged approximately $15,000 a month. Joan and Brian spent almost all of their disposable income each month on purchases that primarily furthered their lifestyle. Other than their retirement plans, the parties have no savings nor investments.

Joan returned to college in 1988 and received her B.A. degree from Rocky Mountain College in 1991 with a double major in art and Christian Thought. She has enrolled in graduate school at the University of Iowa to pursue a Ph.D. in theology and ethics, and someday hopes to teach college. In that capacity, she expects to eventually earn an annual salary of $22,000 to $36,000.

After the date of separation, Brian voluntarily paid Joan $3000 per month for her living expenses, and an additional $500 per

month as support for the one child who was living with her. However, Joan found she was unable to live on this amount, and supplemented it with about $500 a month from her share of the proceeds from the sale of their airplane.

Joan and Brian were able to agree on issues involving child custody, child support, and property division, but were unable to agree on the amount and duration of spousal maintenance. Joan requested $66,000 per year for eight years; $48,000 per year for the next five years; $36,000 per year until her 65th birthday; and $30,000 per year thereafter. Joan also requested a continuation of $30,000 per year maintenance in the event of her remarriage. Brian offered to pay maintenance of $36,000 per year for five years, asserting that this was a reasonable time for Joan to complete her Ph.D., and that she should then be able to support herself.

The court entered its findings of fact and conclusions of law, and issued the final decree on November 18, 1991. Joan was awarded $3000 per month for five years and $1000 per month thereafter. Maintenance is to cease upon the death of either party, Brian's retirement, or Joan's marriage or cohabitation in a marital-like relationship. While Joan is living in Iowa City, Brian will be the primary residential custodian. However, the children will be with Joan for two months each summer and during certain holiday periods, and during those times Brian will pay child support to Joan in the amount of $500 per month per child.

4

Joan moved to amend or make additional findings, amend judgment, and for a new trial on the issue of maintenance. These motions were denied by an order dated January 15, 1992. From this order, Joan appeals.

## STANDARD OF REVIEW

When reviewing an award of maintenance, we will affirm the district court's findings unless they are clearly erroneous. *In re Marriage of Dorville* (Mont. 1992), 836 P.2d 588, 589, 49 St. Rep. 658; *In re Marriage of Eschenbacher* (Mont. 1992), 831 P.2d 1353, 1355, 49 St. Rep. 393, 394.

## I

Did the District Court err when it granted petitioner a maintenance award of $3000 a month for five years, and $1000 a month thereafter?

Before a court may award maintenance, it must find that the spouse seeking maintenance lacks sufficient property to provide for her reasonable needs and is unable to support herself through appropriate employment. Section 40-4-203(1), MCA. Once this threshold has been met, the court must then consider the factors set out under § 40-4-203(2), MCA, when deciding the amount and duration of maintenance:

> (a) the financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently
> . . .

5

(b) the time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;

(c) the standard of living established during the marriage;

(d) the duration of the marriage;

(e) the age and the physical and emotional condition of the spouse seeking maintenance; and

(f) the ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance.

We have said that while a district court must consider each of these factors, it is not necessary for the court to set forth a specific finding for each element. To determine the final maintenance award, all relevant facts should be considered by the court as a whole. *In re Marriage of Dunn* (1991), 248 Mont. 95, 99, 809 P.2d 571, 573.

In this case, the parties agreed that a maintenance award was appropriate. Our review will be limited to the question of whether the court's findings as to amount and duration were clearly erroneous.

After considering the evidence and the court's findings, we conclude that the court did properly consider each of the factors under § 40-4-203(2), MCA, and that substantial evidence exists to support the court's findings. The court reviewed the proposed monthly expenditures, the couple's work history and skills, the standard of living Brian and Joan had attained, and present and future employment prospects. The court also had before it

6

information regarding Joan's likely expenditures while attending school in Iowa, her anticipated housing and educational costs, and heard testimony regarding the expected length of time it would take Joan to complete her Ph.D. The court was aware of how the couple's property had been divided, and whether there were any income-producing assets.

It is not a question of whether we could be persuaded to reach a different conclusion after considering the same evidence. The test is whether the District Court had adequate evidence to support its conclusions. In this instance, we hold that the court's findings were supported by substantial evidence and are not clearly erroneous.

Joan contends that the court did not place enough emphasis on the standard of living she had enjoyed during her marriage, and argues that this should have been the determinative factor, rather than her reasonable needs. As we made clear in *Dunn*, no one factor is determinative, and all relevant facts must be considered as a whole in determining the final award. *Dunn*, 809 P.2d at 573.

The record shows that the court did consider the couple's standard of living, noting that Joan's requested maintenance would comport with her established standard of living. However, after considering all relevant facts, the court concluded this was more than her reasonable needs. Since Joan would be entitled to no maintenance if she had sufficient income to pay for her reasonable needs pursuant to § 40-4-203(1), MCA, it is logically inconsistent

7

to assert that her reasonable needs should not be considered in arriving at the amount of maintenance to which she is entitled.

Joan also asserts that it was error for the court to ignore the tax impact in determining the amount of maintenance. In its findings of fact, the court did acknowledge that Joan's expenditures included a provision for tax liability but made no specific reference to the fact that her award of $3000 per month will be taxed. Joan cites *In re Marriage of Lee* (1991), 249 Mont. 516, 816 P.2d 1076, for the proposition that it was error for the court to not specifically address the tax consequences of the award. Joan's reliance on *Lee* is misplaced because that case involved the equitable distribution of marital property rather than a maintenance award. We will not invalidate the court's decision in regard to a maintenance award due to the fact that tax liabilities were not specifically addressed.

## II

Did the District Court err when it concluded that petitioner's maintenance award would terminate upon her cohabitation in a marital-like manner?

The District Court placed an additional durational limitation on Joan's maintenance award when it included a provision for termination if Joan cohabits in a marital-like manner. However, there is no basis in law nor fact for such a limitation.

Specifically, § 40-4-203(2), MCA, provides that a "maintenance order shall be in such amounts and for such periods of time as the

court deems just, without regard to marital misconduct, and after considering all _relevant facts_ . . . ." (Emphasis added.) Based on the relevant facts, the District Court found that a reasonable duration for maintenance was five years at $3000 per month, and $1000 per month thereafter, subject to offsets depending on Joan's income.

Termination of that award is provided for in § 40-4-208, MCA, under the following circumstances:

(1) a change in circumstances so substantial and continuing as to make the award unconscionable; and

(2) the recipient's remarriage.

Here, without any facts to support such a presumption, the court is assuming that if Joan cohabits, there will be a substantial change in her financial circumstances. That presumption is not supported by substantial evidence and is, therefore, clearly erroneous.

Furthermore, we have previously held that cohabitation is not subject to § 40-4-208(4), MCA, which provides for the automatic termination of maintenance upon the remarriage of the recipient spouse. _In re Marriage of Bourque_ (1990), 241 Mont. 38, 43, 785 P.2d 699, 702. (Section 40-4-208(4), MCA, did not apply where a party was alleged to be living with another person in a quasi-marital relationship.) Absent a showing of changed circumstances which would justify a modification of maintenance, maintenance will not automatically terminate when a recipient spouse cohabits with another individual.

9

We therefore reverse that part of the District Court's judgment which terminated Joan's continued right to maintenance based on cohabitation in a marital-like state.

III

Was the District Court's conclusion that maintenance would terminate if petitioner remarried or cohabited in a marital-like manner a violation of her constitutional rights?

Joan contends that the court's provision terminating maintenance should Joan cohabit in a marital-like manner violates her constitutional rights to due process, privacy, and equal protection. Furthermore, she asserts that § 40-4-208(4), MCA, which provides for termination of maintenance upon the recipient's remarriage, is unconstitutional in that it violates her constitutional guarantee to equal protection under the law.

We will not consider Joan's constitutional claims on the cohabitation provision since we have reversed the District Court on this issue and her claims are moot. In regard to Joan's challenge of § 40-4-208(4), MCA, it is well established that a party does not have standing to challenge the constitutionality of a statute unless he has been adversely affected by the challenged statute. *Allmaras v. Yellowstone Basin Properties* (1991), 248 Mont. 477, 480, 812 P.2d 770, 771; *State v. Booke* (1978), 178 Mont. 225, 230-31, 583 P.2d 405, 409. Joan has not been adversely affected by the statute in question because her maintenance award has not been terminated due to remarriage, and she presents no facts to suggest that she has

10

plans to remarry which are being frustrated by this provision. As such, we hold that Joan does not have standing to challenge this statute under the Montana Constitution.

Accordingly, the decision of the District Court to award Joan maintenance in the amount of $3000 per month for five years, and $1000 per month thereafter, to terminate upon the death of either party, Brian's retirement, or Joan's remarriage is affirmed. However, the restriction which would terminate maintenance upon Joan's cohabitation in a marital-like manner is reversed and this case is remanded for appropriate modification of the decree.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

11

January 12, 1993

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

Stephen C. Mackey
Towe, Ball, Enright & Mackey
P.O. Box 30457
Billings, MT   59107-0457

John A. Dostal
Anderson, Brown, Gerbase, Cebull, Fulton, Harman & Ross
P.O. Box 849
Billings, MT   59103-0849

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
    Deputy