No. 96-108

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997


In Re the Marriage of

SUSAN J. PFEIFER,

Petitioner, Respondent
and Cross-Appellant,

v.

PHILIP CHRISTOPHER
MEREDITH PFEIFER,

Respondent, Appellant
and Cross-Respondent.


APPEAL FROM:    District Court of the Twentieth Judicial District,
In and for the County of Lake,
The Honorable C.B. McNeil, Judge presiding.


COUNSEL OF RECORD:

For Appellant:

Philip J. O'Connell, Missoula, Montana

For Respondent:

Evonne Smith Wells, Colleen E. Ambrose, Laurence J. Ginnings,
Missoula,          Montana


Submitted on Briefs: February 6, 1997

Decided:  May 20, 1997
Filed:


_____
Clerk

Justice William E. Hunt, Sr., delivered the Opinion of the Court.


The marriage of Appellant Philip Christopher Meredith Pfeifer (Chris) and
Respondent and Cross-Appellant Susan J. Pfeifer (Sue) was dissolved pursuant to the
findings of fact, conclusions of law and decree of dissolution entered by the Twentieth

Judicial District Court, Lake County.  Chris appeals the court's attorney fee award, and Sue cross-appeals the court's division of the marital estate and the courtþs failure to award her maintenance.

We affirm in part, reverse in part, and remand.

Chrisþs single issue on appeal is whether the District Court erred in awarding Sue attorney fees.

Sue raises five issues in her cross-appeal.  Those issues are as follows:

1.    Were the District Court's findings concerning Sue's contribution to the marital estate clearly erroneous?

2.    Did the District Court erroneously value Sue's possessory interest in the family home?

3.    Did the District Court abuse its discretion in distributing the  marital estate by failing to award Sue sufficient income-producing property?

4.    Did the District Court err in charging against the marital estate debt owed to trusts from which Chris receives income?

5.    Did the District Court err when it failed to award Sue maintenance?

BACKGROUND

Chris and Sue were married in Arizona in 1988.  They have one child together, Barbara, who was born in 1988.  A short time before marrying Chris, Sue was involved as a party in divorce and related bankruptcy proceedings.  Sue entered into the marriage with Chris with two minor children from her prior marriage, a 1985 Toyota Cressida, and some $10,000 in cash.  Sue has earned a high school education and an Associate of Arts degree from Scottsdale Community College in Arizona, and prior to her marriage with Chris had been employed both as a nurse's aide and a restaurant hostess.

Chris, too, was married and divorced once before entering into the marriage with Sue.  Chris has a minor daughter, Michelle, from his first marriage who now lives in Arizona with her mother.  Chris receives a monthly disbursement of approximately $50,000 from a number of trusts created for him by his parents and other relatives.  Chris has earned a GED high school equivalency degree.

In 1989, Chris, Sue, Barbara and Sue's two sons from her prior marriage moved from Arizona to a Pfeifer family home in St. Ignatius, Montana.  The home and 160 acres surrounding it were purchased from Chrisþs father.  Chris and Sue attempted to operate the property as a ranch.  They purchased cattle and horses, and hired ranch hands to assist in the ranching duties.  The parties claim that the purpose of starting up the ranch was to generate a loss to off-set income from the sale of stock that Chris inherited.  The ranch has not been profitable.

While married, Chris and Sue enjoyed an expansive lifestyle.  They traveled extensively, and purchased many material goods, including Arabian horses, boats, and automobiles.  In addition, they purchased two more tracts of land in the St. Ignatius area, although the family continued to live in the home purchased from Chrisþs father.  The parties also purchased homes in Scottsdale, Arizona and Missoula, Montana.  To assist in the care of the children, Chris and Sue hired nannies and housekeepers.

In the early 1990s the marriage began to deteriorate, the parties separated, and in 1994 Sue filed a petition for dissolution.  After a hearing, the court on December 15, 1995, entered its findings of fact, conclusions of law and decree of dissolution dividing the $2,560,644.00 marital estate. The court declared Sue the primary residential custodian of Barbara and ordered Chris to pay $6,977 per month for Barbara's support, but declined to award Sue maintenance.  The court ordered Chris to pay Sue's attorney fees as well as his own.  Chris appeals, and Sue cross-appeals, from this decree.

CHRISþS ISSUE ON APPEAL

Did the District Court err in awarding Sue attorney fees?

We review a district court's award of attorney fees in a dissolution action to determine whether the court abused its discretion.  In re the Marriage of Roullier (1987), 229 Mont. 348, 360, 746 P.2d 1081, 1088 (citations omitted).  A district court has abused its discretion if its award of attorney fees is not supported by substantial evidence.  In re the Marriage of Hall (1990), 244 Mont. 428, 436, 798 P.2d 117, 122.

The attorney fees at issue here were awarded pursuant to  40-4-110, MCA, which states:

The court from time to time, after considering the financial resources of both parties, may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under chapters 1 and 4 of this title and for attorney's fees, including sums for legal services rendered and costs incurred prior to the commencement of the proceeding or after entry of judgment. The court may order that the amount be paid directly to the attorney, who may enforce the order in his name.

This Court has held that an appropriate attorney fee awarded pursuant to  40-4-110, MCA, is one which is: (1) based on necessity; (2) reasonable; and (3) based on competent evidence. In re the Marriage of Barnard (1994), 264 Mont. 103, 109, 870 P.2d 91, 95 (citing In re the Marriage of Zander (1993), 262 Mont. 215, 227, 864 P.2d 1225, 1233). Moreover, the district court must conduct a separate hearing after trial in order to determine the reasonableness of the attorney fees. In re the Marriage of Davies (1994), 266 Mont. 466, 479-80, 880 P.2d 1368, 1377. Chris contends that the District Court's attorney fee award did not comply with any of these requirements. We agree.

In its findings of fact the court found:

[t]hat after considering the financial resources of both parties pursuant to Sec. 40-4-110, MCA, [Chris] should be responsible for paying [Sue's] attorney fees and costs incurred in the this [sic] action, as well as his own.

In its conclusions of law, the court stated:

[t]hat [Chris] should pay [Sue's] reasonable attorney fees and costs of suit as well as his own.

Sue contends that "this Court has repeatedly affirmed an award of attorney's fees where the record shows that the District Court considered the financial resources of both parties," citing Roullier, 746 P.2d at 1088; In re the Marriage of Manus (1987), 225 Mont. 457, 465, 733 P.2d 1275, 1279-80; and, In re the Marriage of Carr (1983), 205 Mont. 269, 273, 667 P.2d 425, 427. However, there is nothing in Sue's contention, or in the cases she cites, that requires us to affirm the court's award here. The court's statement that it considered the partiesþ financial resources, without more, is an insufficient basis upon which to determine that an attorney fee award is necessary. The court made no other findings that would indicate how a consideration of the parties' respective financial resources dictated an award to Sue. Moreover, our review of the record does not reveal any evidence which would clarify how the parties' respective financial resources leads to, and supports, the court's conclusion. We reverse the award of attorney fees.

CROSS-APPEAL ISSUE ONE

Were the District Court's findings concerning Sue's contribution to the marital estate clearly erroneous?

We review a district court's findings regarding the distribution of the marital estate to determine if those findings are clearly erroneous. In re the Marriage of Eklund (1989), 236 Mont. 77, 80, 768 P.2d 340, 343. We employ the following three-part test in determining whether a district court's findings are clearly erroneous: (1) the Court will review the record to see if the findings are supported by substantial evidence; (2) if the findings are supported by substantial evidence, the Court determines if the trial court has misapprehended the effect of the evidence; and (3) if substantial evidence exists and the effect of the evidence has not been misapprehended, the Court may still find that "a finding is clearly erroneous when, although there is evidence to support it, a review of the record leaves the court with the definite and firm conviction that a mistake has been committed."

In re the Marriage of Schmitz (1992), 255 Mont. 159, 165, 841 P.2d 496, 500 (citing Interstate Production Credit Ass'n v. DeSaye (1991), 250 Mont. 320, 323, 820 P.2d 1285, 1287).

In distributing the marital estate, a district court is required to consider, among other things, a spouse's contribution as a homemaker. Section 40-4-202(1), MCA. The District Court found that Sue

> was a homemaker during the parties' marriage and made minor contributions to the parties' ranching operation. The income [Chris] received from his trusts allowed the employment of others to perform most housekeeping and child rearing duties during the marriage. Most of [Sue]'s contribution to the maintenance of the marital estate consisted of spending funds provided by [Chris].

Sue contends that these findings are clearly erroneous because they are not supported by substantial evidence. We disagree.

Our review of the record reveals substantial evidence that Sue was not employed outside the home, but was a homemaker. Further, there is substantial evidence supporting the court's finding that Chris and Sue employed housekeepers, nannies, and ranch hands to assist with household and ranch duties. There is testimony in the record to the effect that the majority of these duties were performed by the hired help, rather than Chris and Sue. Finally, the record documents Chris's and Sue's extravagant spending; neither party can seriously argue otherwise.

However, Sue argues that the court was presented with evidence that established her substantial, rather than minor, contributions to the child rearing and ranching duties. This argument is largely irrelevant in light of the fact that the court's findings were supported by substantial evidence. See In re the Marriage of Peetz (1992), 252 Mont. 448, 454, 830 P.2d 543, 547. In resolving conflicting testimony, we defer to the district court. As we stated in Peetz:

> The trial court sits in the best position to judge the credibility of the testimony proffered by the parties to a dissolution action. Because the District Court had the opportunity to observe the demeanor of the witnesses, we defer to its resolution of any conflicting evidence.

Peetz, 830 P.2d at 547 (citation omitted). The District Court's findings are supported by substantial evidence, and are not clearly erroneous.

CROSS-APPEAL ISSUE TWO

Did the District Court erroneously value Sue's possessory interest in the family home?

As part of its marital property distribution, the District Court ordered that Sue was entitled to possession of the family home in St. Ignatius and the surrounding 160 acres until July 1, 2007, at which time Barbara will have reached the age of majority. The court valued Sue's possessory interest at $552,000, and credited her with this amount in calculating the overall property distribution. Sue argues that because this figure is not supported by evidence, the court erred in its valuation. We agree.

While the parties stipulated that the value of the house and acreage was $480,000, the court nevertheless valued Sue's eleven-year possessory interest at $552,000. As Sue indicates, she would have been credited with a lesser portion of the marital estate if she had been awarded the house and acreage "free and clear of encumbrances."

That the court attributed a higher value to Sue's possessory interest than the stipulated value of the house and acreage is not in and of itself erroneous. It was error, however, for the court to reach such a determination without a substantial evidentiary basis. Sue argues, and Chris concedes, that there was no direct evidence presented at trial regarding the value of Sue's possessory interest in the home and acreage. Chris's argument, despite this concession, that the court properly valued the possessory interest based on "reasonable judgment and common sense," as well as an extrapolation from the stipulated value of the home and evidence of the rental value of an adjacent home owned by Chris, must fail. The District Court's "reasonable judgment and common sense" are not in doubt, nor are they at issue here. Rather, what is controlling is the lack of evidence directly addressing the value of Sue's possessory interest. The court erred in valuing Sue's possessory interest.

We reverse and remand this issue to the District Court so that it may consider

evidence regarding the value of Sue's possessory interest in the family home and 160 acres.

CROSS-APPEAL ISSUE THREE

Did the District Court abuse its discretion in distributing the marital estate by failing to award Sue sufficient income-producing property?

In distributing the marital estate, the trial court is to consider the factors contained in  40-4-202(1), MCA, some of which are set out below:

[T]he duration of the marriage and prior marriage of either party; the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, and needs of each of the parties; custodial provisions; whether the apportionment is in lieu of or in addition to maintenance; and the opportunity of each for future acquisition of capital assets and income.

Sue concedes that the court "correctly recited" the factors found in  40-4-202(1), MCA, but argues that the court "failed to give sufficient weight to the trusts [of which Chris is a beneficiary] in dividing the [marital] property in light of the two statutory factors most relevant to this case: (1) the property division was the alternative to maintenance, and (2) the property division left significantly disparate opportunities to acquire assets and income in the future."

Sue does not contend that she is entitled to a portion of Chrisþs trusts; rather, Sue argues that because the court ordered that the property division was to serve as an alternative to maintenance, and because Chris will continue to be the sole beneficiary of multi-million dollar trusts, a truly equitable property distribution would require that she be granted more income-producing property. Sue contends that the court did not award her sufficient income-producing property.

The court found, on the basis of testimony given by a vocational expert, that Sue's annual income potential is $16,000. On the other hand the court found that Chris, because of his status as trust beneficiary, has a "substantial" opportunity to acquire income or assets in the future. Sue points out that the parties have widely disparate income acquisition potential, and that the court's property division did not sufficiently alleviate this disparity. Moreover, Sue contends that the court's division was additionally insufficient because her award was in lieu of maintenance. This contention is discussed in more detail in Cross-Appeal Issue Five.

It is not entirely clear for what lifestyle or purpose an award of $335,465 in property, $400,000 in cash, $6,977 per month in child support, and an as yet inconclusively valued temporary possessory interest in a 160 acre ranch would be insufficient. Sue impliedly argues that the court's award will not allow her to enjoy the standard of living she had while she was married, but has presented no concrete argument or evidence to support this assertion; in fact, the amount of property and cash that she received supports a contrary argument. Indeed, the court found that this award would enable Sue to maintain a standard of living similar to the one she enjoyed during the marriage and also provide her with the opportunity to acquire income or assets in the future. Sue testified that she could, and would prefer to, support herself through self-employment on the ranch, particularly by raising livestock and harvesting ostrich eggs; Sue's ability to undertake this type of work, perhaps with some assistance, is supported by testimony from the vocational expert. Sue was awarded a possessory interest in the ranch, whose mortgage, property tax and insurance costs are to be paid by Chris during the period of Sue's possession. Sue was awarded a number of horses and cattle and two pair of ostriches. Sue was awarded a substantial amount of cash, a portion of which could presumably be used to hire ranch help as needed. As we see it, the court provided Sue with ample resources to pursue the vocation and lifestyle of her choosing.

Sue makes much of the disparity between her income acquisition potential, and Chrisþs. Sue cites In re the Marriage of Smith (1981), 191 Mont. 200, 622 P.2d 1022, where this Court remanded the case to the district court to make a more equitable property division because of a substantial disparity in the parties' respective earning potentials. In that case, the trial court had determined the husband's income to be $2,500 per month, and the wife's income to be $1,900 per year. The court divided the $81,066.95 marital estate nearly equally. In order to reach that equality, the court

imposed on property awarded to the wife a $14, 161 mortgage in favor of the husband. We concluded that imposing the mortgage on the wife's property manifested the court's failure to consider the wife's inability to acquire property in the future. Smith, 622 P.2d at 1024.

Smith does not require that we find the court here in error. Simply, in Smith, on the basis of the facts in that case, we determined that the court's property distribution was inequitable in that it did not sufficiently balance the disparity in the parties' respective earning potentials. Here, pursuant to the relevant facts and circumstances of this case, we conclude that the District Court's property distribution is equitable as it sufficiently balances the disparity in the parties' respective income acquisition potentials. As stated, Sue has been awarded a large amount of property and cash. Unlike the situation in Smith, there is no reasonable basis here for a contention that this award is inadequate. We conclude that the court's property division will sufficiently meet Sue's needs where perhaps her own earning power alone would not. The property division brings the income disparity reasonably into balance. The court did not err.

## CROSS-APPEAL ISSUE FOUR

Did the District Court err in charging against the marital estate debt owed to trusts from which Chris receives income?

The court calculated $952,433.56 as the amount of debt attributable to the marital estate. Of this total debt amount, $631,000 is derived from two loans Chris borrowed from two of the trusts of which he is the beneficiary. $431,000 was borrowed in order to purchase a home in Arizona, while $200,000 was borrowed to purchase the home and 160-acre ranch property in St. Ignatius. Sue contends the court erred in attributing to the marital debt the $631,000 borrowed from, and repayable to, the trusts of which Chris is the sole beneficiary.

Sue argues that the $631,000 should not be considered a true debt because in repaying the trust for that loan, Chris is essentially repaying himself. Chris disagrees, contending that his repayment obligations on these loans are genuine. In support of this contention, Chris points to the deposition testimony of Karol Mauk, Chris's trust officer, who explained that: Chris signed promissory notes for the two loans, and that the notes are secured by mortgages on the Arizona and Montana homes purchased with the loan proceeds; Chris has been making and will continue to make interest payments on the loans; and that the loans must ultimately be repaid in full. Chris asserts that this evidence supports the court's decision to include as marital debt the $631,000 loan borrowed from the trusts.

Sue contends, however, that Ms. Mauk's deposition testimony is insufficient evidence to support the court's decision. Sue cites Schmitz, 841 P.2d 496, as support for her contention. In Schmitz, the court included as marital debt a $22,600 loan that the husband claimed that he owed his father. Both the husband and the father testified as to the existence of the loan, but their descriptions of the amount of the loan were inconsistent. Moreover, the husband testified that his obligation to repay the loan was pursuant to a verbal agreement; however, the husband had not yet made any payments, nor had the father demanded any payment. Schmitz, 841 P.2d at 500. We concluded that "[n]o evidence was presented of a loan agreement, note, check, form of receipt, or existence of terms of loans." Schmitz, 841 P.2d at 501.

Sue argues that Schmitz requires that, in the context of determining the marital estate, a party asserting the existence of a valid debt chargeable to the estate must present documentary evidence to that effect. We disagree with Sue's interpretation of Schmitz. Schmitz does not require documentary evidence of a loan agreement, it merely requires competent evidence of a loan agreement. As stated, evidence was presented through Ms. Mauk's testimony of the existence of two promissory notes secured by mortgages on the homes purchased with the loan proceeds. We conclude that this evidence was sufficient to support the court's decision to include the $631,000 in loans as debt chargeable to the marital estate. The court did not err.

## CROSS-APPEAL ISSUE FIVE

Did the District Court err when it failed to award Sue maintenance?

When a court awards maintenance in a dissolution proceeding, it must do so

pursuant to the guidelines set forth in 40-4-203, MCA. However, maintenance awards are generally not favored in Montana. In re the Marriage of Luisi (1988), 232 Mont. 243, 247, 756 P.2d 456, 459. A maintenance award should only be made if, first, the spouse seeking maintenance lacks sufficient property to provide for that spouse's reasonable needs, and, second, the spouse is unable to support himself through appropriate employment or is otherwise precluded from seeking employment outside of the home. Section 40-4-203(1), MCA; see also In re the Marriage of Dorville (1992), 254 Mont. 111, 113, 836 P.2d 588, 589. We review a court's decision regarding maintenance to determine whether the court's findings supporting its decision are clearly erroneous. In re the Marriage of Bross (1993), 256 Mont. 174, 177, 845 P.2d 728, 730.

The District Court decided not to award Sue maintenance, determining that Sue had been awarded sufficient property to provide for her reasonable needs. Sue argues, however, that the court's decision not to award her maintenance was erroneous because the court did not award her sufficient income-producing property. This Court has defined "sufficient property" as that phrase appears in 40-4-203, MCA, to mean "income-producing property." Luisi, 756 P.2d at 459-60. Sue contends that her possessory interest in the 160-acre ranch is not an income-producing asset, but an income-consuming asset. Sue asserts that because she did not receive enough horses, cattle, and equipment, she cannot make money through ranching. Moreover, Sue contends that even if she were able to make a profit from ranching, it could never be enough to meet her reasonable needs as established by the lifestyle she enjoyed during the marriage. We do not agree with Sue, as the record supports the court's findings to the contrary.

With respect to its decision not to award maintenance, the court found:

That [Sue] asks for spousal maintenance of $8,000.00 per month and [Chris] asks that no maintenance be awarded. Sec. 40-4-203, MCA provides that the Court may grant a maintenance order only if it finds that the spouse seeking maintenance: (a) lacks sufficient property to provide for her reasonable needs; and (b) is unable to support herself through reasonable employment. The Court finds that [Sue] entered the marriage with virtually no assets and will exit the marriage a millionaire with a substantial monthly payment for the support of her minor child, and she is able to support herself through appropriate employment on the 160-acre ranch or otherwise. [Sue], therefore, will have sufficient property to provide for her reasonable needs and is able to support herself through appropriate employment and is not entitled to spousal maintenance.

The court's findings in this regard are supported by substantial evidence. We have described already the property award to Sue: the cash payment of $400,000; the possession and use of the 160-acre ranch, without the obligation to pay mortgage, tax, or insurance costs; and, the award of livestock (seven horses, ten charolois cattle, two longhorn cattle, and two pair of ostriches) and equipment (horse trailers, irrigation line, "Hotsy" cleaning system). We have also described the testimony regarding Sue's desire and ability to support herself through employment on the ranch. This evidence supports the determinations that the property award will provide Sue with income-producing property, will allow Sue to support herself through the employment of her choosing, and will enable Sue to enjoy a standard of living similar, if not identical, to her standard of living while married. Sue's contentions that the ranch is not an income-producing asset, and alternatively, that she has not received sufficient income-producing assets, are unfounded and in any event largely irrelevant, as "[i]t is not a question of whether we could be persuaded to reach a different conclusion after considering the same evidence. The test is whether the District Court had adequate evidence to support its conclusions." Bross, 845 P.2d at 730-31. The court's findings are supported by substantial evidence, and are not clearly erroneous. The court did not err in its decision not to award Sue maintenance.

CONCLUSION

Our review of the record in this matter leaves us with the firm conviction that, for the most part, the District Court properly addressed the issues before it in this matter.

The court equitably distributed the marital estate, giving due consideration to the respective needs, desires, and abilities of the parties.  There are, however, two exceptions to our overall "firm conviction," and on those bases we reverse and remand.  First, we conclude that the court erred in awarding Sue attorney fees, and on that issue we therefore reverse.  Second, we conclude that the court erred in its valuation of Sue's possessory interest in the St. Ignatius home and 160-acre ranch.  On remand, the court must conduct a hearing where it shall consider evidence which directly addresses the value of this possessory interest.

Affirmed in part, reversed in part, and remanded.

/S/  WILLIAM E. HUNT, SR.


We Concur:

/S/  JIM REGNIER
/S/  JAMES C. NELSON
/S/  W. WILLIAM LEAPHART
/S/  KARLA M. GRAY