NO.   93-026

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

IN RE THE MARRIAGE OF

BRENDA LEIGH ADAMS, now
known as BRENDA LEIGH ELVEY,

     Petitioner and Appellant,

  and

PAUL LEON ADAMS, JR.,

     Respondent and Respondent.

FILED

OCT 05 1993

Ed Smith

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:  District Court of the Fourth Judicial District,
              In and for the County of Missoula,
              The Honorable John S. Henson, Judge presiding.

COUNSEL OF RECORD:

     For Appellant:

          Kerry Newcomer; Geiszler & Newcomer, Missoula,
          Montana

     For Respondent:

          Raymond P. Tipp; Tipp, Frizzell & Buley, Missoula,
          Montana

Submitted on Briefs:   August 26, 1993

Decided:   October 5, 1993

Filed:

Justice Karla M. Gray delivered the Opinion of the Court.

Brenda Adams appeals from portions of the findings of fact, conclusions of law and decree of dissolution entered by the Fourth Judicial District Court, Missoula County. We affirm.

We phrase the issues on appeal as:

1) Did the District Court err in declining to award maintenance to Brenda?

2) Did the District Court err in determining the amount and duration of the parents' child support obligations?

3) Did the District Court err in ordering the parties to pay their respective attorney's fees and costs?

Brenda and Paul Adams were married in 1975 in Stoney Ridge, Ohio. At the time of the dissolution of their marriage on November 2, 1992, Brenda was thirty-eight years old and Paul was forty-seven years old. Two children were born of the marriage: Beth, age fourteen, and Steven, age eleven. Steven suffers from Down's Syndrome: expert testimony established that he functioned at approximately a four-year-old level mentally.

During the marriage, Paul was employed in the railroad industry in various positions. He currently works as a safety engineer and earns approximately $39,200 annually, plus a profit sharing bonus which, although not guaranteed, has averaged $3,500 per year. Brenda served as the primary homemaker and caretaker of the couple's children during the marriage. She is presently employed as a grocery clerk earning $4.75 per hour. Brenda began, but did not complete, training as a respiratory therapist.

Brenda filed a petition for dissolution of the marriage on May 17, 1990. The District Court held the dissolution hearing on September 3 and 4, 1992, and entered its findings of fact, conclusions of law and decree of dissolution on November 2, 1992.

Did the District Court err in declining to award maintenance to Brenda?

When reviewing a grant or refusal of maintenance, we will not overturn the district court unless the court's findings are clearly erroneous. In re Marriage of Bross (Mont. 1993), 845 P.2d 728, 730, 50 St.Rep. 13, 14. A district court may award maintenance after the marital property has been equitably distributed and the court has properly applied the criteria of § 40-4-203, MCA. A district court may grant maintenance only if it finds that the spouse requesting maintenance:

> (a) lacks sufficient property to provide for her reasonable needs; and

> (b) is unable to support herself through appropriate employment . . . .

Section 40-4-203(1), MCA (emphasis added); In re Marriage of McLean (Mont. 1993), 849 P.2d 1012, 1017, 50 St.Rep. 35, 38; In re Marriage of Dorville (1992), 254 Mont. 111, 113, 836 P.2d 588, 589.

In distributing the marital property, the District Court awarded Brenda approximately $80,944 in cash or cash-equivalent assets, a car, a one-carat diamond ring and numerous household furnishings. The District Court found that this apportionment was made in lieu of maintenance and would provide Brenda with the opportunity for future acquisition of capital assets and income.

3

Brenda argues that because she spent $11,442 of that cash during the separation period on household expenses, she did not actually receive the amount awarded by the court and therefore, the denial of maintenance was erroneous. We disagree.

Initially, it is questionable whether the entire $11,442 withdrawn from the couple's savings account during the separation period properly can be categorized as "household" expenses. We note that Brenda used $5,809, nearly half of the disputed amount, to pay the attorney's fees and expert witness fees she incurred in the dissolution proceedings.

We also note that from May, 1990, until October, 1991, Brenda received approximately $1,860 per month from Paul to help defray household expenses during the separation period. In October of 1991, the parties stipulated that Paul would pay Brenda $1,030 per month as temporary child support and maintenance until the dissolution was final. As such, the couple's joint savings account was not the only source of funds available to Brenda for household expenses. We conclude, therefore, that the District Court did not err in including the previously spent $11,442 in the distributable marital estate.

Furthermore, the court ordered Paul to pay $724.47 per month in child support, provide funds for child care, obtain medical insurance and pay all uninsured medical expenses for the children. Given the distribution of the marital estate and Paul's future obligations to Brenda, we cannot conclude that the District Court's determination that Brenda was awarded sufficient property to meet

4

her reasonable needs is clearly erroneous. Because both factors contained in § 40-4-203(1), MCA, are required before a court can award maintenance, we need not discuss whether Brenda is capable of supporting herself through appropriate employment.

We hold that the District Court did not err in declining to award Brenda maintenance.


Did the District Court err in determining the amount and duration of the parents' child support obligations?

Brenda raises several concerns regarding the amount and duration of child support awarded by the District Court. Our standard of review for an award of child support is that a presumption exists in favor of the district court's determination. We will reverse a district court's determination only for an abuse of discretion. In re Marriage of Xukes (Mont. 1993), 852 P.2d 655, 657, 50 St.Rep. 553, 554. After reviewing the record, we conclude that the District Court did not abuse its discretion in determining the amount and duration of the parties' support obligations.

Brenda advances several challenges to the court's child support determinations but neither articulates her arguments clearly nor offers legal or record-based support to demonstrate an abuse of discretion. For example, she seems to complain that the court "probably" did not apply, or erroneously applied, the child support guidelines. She concedes that she did not submit a proposed calculation under the guidelines implemented in 1992 and offers no record-based calculation to illustrate the court's alleged error in calculation. Her main concern appears to be that

5

if Paul requests a recalculation under the 1992 guidelines, his child support obligation may be reduced. It is not this Court's role to make legal determinations based on unspecified and unsupported assertions of error or a party's concern about actions that may or may not occur in the future.

Similarly, Brenda argues that the District Court should have considered Steven's likely need for support beyond majority. In this regard, she does not present any legal authority requiring the court to do so or supporting her assertion that the failure to do so constitutes an abuse of discretion.

We conclude, on the basis of the record before us, that the District Court did not abuse its discretion in determining the amount and duration of the parents' child support obligations.

Did the District Court err in ordering the parties to pay their respective attorney's fees and costs?

Section 40-4-110, MCA, allows a district court to award attorney's fees to either party after considering the financial resources of both parties. This Court will not overturn a court's denial of attorney's fees under § 40-4-110, MCA, absent an abuse of discretion. In re Marriage of Wackler (Mont. 1993), 850 P.2d 963, 966, 50 St.Rep. 406, 408.

It is clear from the court's findings that it considered the financial resources of both parties. It specifically found that each party had sufficient assets with which to pay his or her own attorney's fees and costs. We conclude that the District Court did not abuse its discretion in declining to award Brenda attorney's

6

fees and costs.

Affirmed.

Pursuant to Section I Paragraph 3(c), Montana Supreme Court 1988 Internal Operating Rules, this decision shall not be cited as precedent and shall be published by its filing as a public document with the Clerk of the Supreme Court and by a report of its result to Montana Law Week, State Reporter and West Publishing Company.

_____
Justice

We concur:

_____

_____

_____

_____
Justices

7

October 5, 1993

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

Kerry N. Newcomer
Geiszler & Newcomer
265 West Front
Missoula. MT  59802

Raymond P. Tipp, Esq.
Tipp, Frizzell & Buley
P.O. Box 3778
Missoula, MT  59806-3778

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
   Deputy