JUSTICE GRAY
dissenting.
I must respectfully dissent from the Court’s opinion on issue one, relating to the enforceability of the parties’ settlement agreement.
It is my view that the settlement agreement reached by Garnet and Arlyn Simms is enforceable insofar as it relates to the marital property and maintenance. The Court approaches this settlement agreement as though it were a separation agreement under § 40-4-201, MCA, between parties to a marital dissolution. If I shared that view, I would agree that the agreement did not meet the requirement of § 40-4-201, MCA, that it be in writing and, therefore, would conclude that it was not enforceable.
I see this agreement differently, however. This was an agreement which resulted from a settlement conference scheduled and presided over by the District Court. As a result of that conference, the parties agreed to a specific distribution of the marital assets, including a substantial cash payment toward equalizing the property distribution and in lieu of maintenance. The contents of the settlement agreement were recited on the record. The parties were then sworn and advised by the court that the agreement would be binding on them, testified that they had full knowledge of the value of all the assets and liabilities of the marriage, and agreed to the recited terms as a full and final settlement. The agreement should be enforced.
The Court suggests that the only enforceable “settlement agreement” in a marital action is one which meets the requirements of § 40-4-201, MCA. In my view, the statute does not support such an interpretation. The statute merely provides that parties to a marital separation or dissolution action may enter into a written separation agreement which, insofar at it relates to property distribution and is not unconscionable, will be binding on the court. The statute does not state that no other kind of settlement agreement is enforceable in a marital action; nor is such a conclusion sound public policy.
Faced with an ever-increasing caseload and limited resources, the district courts of Montana undertake a variety of appropriate methods to control litigation, expedite cases, and clear their dockets. One of the most productive of such methods is the increasing use by the courts of various settlement procedures in all manner of civil cases, *331 including settlement conferences presided over by district judges. Settlement conferences can achieve mutually acceptable results for the parties at a significantly decreased financial cost and in much less time than proceeding through costly, time-consuming and emotionally draining trials. Correspondingly, settlement conferences can clear the courts’ dockets for those cases which ultimately must proceed to trial.
The sheer number of marital dissolution cases in the district courts of Montana makes those cases particularly appropriate for the use of settlement conferences. Too, the emotional nature of the disputes between the parties can sometimes be put into a more objective framework during a judicially conducted settlement conference. I believe the district courts should be recognized and applauded for their efforts in conducting settlement conferences and encouraged to keep up the good work.
The Court’s result here does just the opposite. It essentially tells the district courts not to bother with settlement conferences in marital cases unless they also put the parties to the extra time, expense and aggravation of preparing written documents. The Court apparently does not find a specific agreement, reached as a result of a court-conducted settlement conference, recited on the record, and accepted by both parties in sworn testimony a suitable substitute for a written separation agreement under § 40-4-201, MCA. I disagree.
Nor am I persuaded that Hayes has any applicability here. The facts and the record before us in Hayes differed significantly from the present case. In Hayes, the court encouraged the parties to attempt to reach settlement. At the end of lengthy negotiations, the parties reported to the court that they believed settlement had been reached and the purported terms of the settlement were recited into the record. The terms were murky, at very best, containing such statements as “We can’t vouch for that to be sure but we believe that’s a fairly accurate representation;” the terms also indicate a clear lack of knowledge about such an important element of the marital assets as the parties’ separate retirement entitlements. As a result, the court properly required the parties to submit the agreement in written form but no written agreement was ever submitted. Notwithstanding the absence of the written agreement, the court proceeded to enter findings, conclusions and a decree. The husband appealed.
The Court states here that in Hayes we held that a settlement agreement not reduced to writing is not enforceable. I disagree with that interpretation. The question in Hayes, as the Court correctly *332 states, was whether the district court erred in determining that both parties had agreed to a property settlement and in basing its findings and conclusions on that agreement. While we noted that no written separation agreement was submitted, we did not hold that no other type of settlement agreement was enforceable. We recognized that a settlement agreement “of necessity needs to be specific to avoid the type of controversy presented here.” Hayes, 846 P.2d at 273. As noted above, the Hayes agreement was totally lacking in such specificity. The murkiness and lack of specific agreement about specific property is what prompted our decision in Hayes that the parties had not reached an agreement on which the court could act, not the absence of a written agreement.
The agreement recited into the record here and agreed to as a full and final settlement by both parties in sworn testimony is very different from that in Hayes. Here, the property and maintenance-related terms of the settlement agreement were as follows: that Garnet would receive the money market account with Montana Bank, the 1986 Buick equity, the personal property in her possession, the public employees retirement fund, the IRA Pioneer mutual fund, the Bate-man Eicher money market fund, the Ford Motor Company shares and the Phillip Morris Company shares. In addition, Garnet was to receive, “in equalization of property and in lieu of any maintenance,” $62,500 in cash, to be paid within sixty days. All of this represented a “full and final settlement of any and all property which [Garnet] may have a claim on, including any property ... [Arlyn] may have inherited....”
Here, the terms of the agreement were clear and there was no order from the cotut to reduce them to writing. Indeed, given the clarity of the agreement’s terms, such an order was unnecessary. The agreement, together with the parties’ testimony regarding their knowledge of all marital assets and their acceptance of the terms, provided a sufficient basis for the court to accept and enforce the agreement. This Court should do the same.
Because it is my view that the settlement agreement is enforceable, I would not reach issues two and three. I do, however, concur in the Court’s rationale and result on those issues. I also concur in the Court’s opinion on issue four.
JUSTICE HARRISON joins in the foregoing dissent of JUSTICE GRAY.