No. 99-080

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 105

299 Mont. 298

99 P. 2d 969

IN RE THE MARRIAGE OF

LINDA K. HARKIN,

Petitioner and Respondent,

and

JOHN E. HARKIN,

Respondent and Appellant.

APPEAL FROM: District Court of the Eleventh Judicial District,

In and for the County of Flathead,

The Honorable Katherine R. Curtis, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

P. Mars Scott and Patrick G. Sandefur, Mulroney, Delaney & Scott,

Missoula, Montana

For Respondent:

David L. Astle, Astle & Astle, Kalispell, Montana

Submitted on Briefs: November 18, 1999

Decided: April 27, 2000

Filed:

_____

Clerk

Justice Jim Regnier delivered the opinion of the Court.

¶1 John E. Harkin appeals the Findings of Fact, Conclusions of Law, and Decree of Dissolution entered by the Eleventh Judicial District Court, Flathead County. We affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

¶2 This appeal raises the following issues:

¶3 1. Whether the District Court erred in entering a Qualified Domestic Relations Order?

¶4 2. Whether the District Court erred in dividing the marital estate?

¶5 3. Whether the District Court erred in awarding maintenance?

¶6 4. Whether the District Court erred in awarding attorney fees?

## FACTUAL BACKGROUND

¶7 The Respondent and Appellant, John E. Harkin ("Jack"), and the Petitioner and Respondent, Linda K. Harkin ("Linda"), were married on August 25, 1973, in Illinois. Jack and Linda have four children, two of whom were minors and living with Linda at the time of trial.

¶8 At the time Jack and Linda were married, both parties worked for Delta Airlines. Jack

worked as a pilot from 1964 until health problems which began in January 1996 prevented him from continuing to work. It is unlikely that Jack can be gainfully employed in the future. Just prior to leaving Delta, Jack was earning approximately $230,000 per year. Linda worked for Delta as a flight attendant from 1964 until 1979 when she quit to raise the couple's children.

¶9 Jack stopped receiving regular pay from Delta in January 1996 after he was hospitalized with health problems. As a result of his hospitalization, he received sick leave at his full regular pay for the first few months of 1996. From April through July of 1996, Jack received short-term disability and supplemental pay which amounted to approximately 90 percent of his normal pay. Coincidentally, at this same time Delta was offering early retirement benefits to qualifying pilots. Jack elected early retirement and, as a result, his disability pay terminated as of the date of election, August 1, 1996.

¶10 On April 30, 1996, Linda filed a Petition for Legal Separation. On September 5, 1996, the court issued a Qualified Domestic Relations Order ("QDRO") regarding the distribution of Jack's retirement fund. Delta did not accept this QDRO. On September 20, 1996, Jack sent a letter to Delta revoking his retirement election until he received a divorce. However, he requested that Delta not interfere in any way with Linda's portion of the benefits. In the meantime, neither Linda nor Jack was receiving income. On December 18, 1996, in the absence of Judge Curtis, the judge presiding over the Harkins' dissolution, Judge Ted O. Lympus issued a second QDRO for the purpose of providing Linda with a source of income.

¶11 Pursuant to the second QDRO, the court awarded Linda 35.385 percent of Jack's Delta retirement benefits. Upon approval by Delta, Linda received a lump sum benefit in the amount of approximately $419,000 and began receiving monthly payments of approximately $2700 in January 1997. Linda's lump sum payment was paid entirely from qualified, tax-deferrable funds. There is a $765,118 lump sum payment and $5467 monthly payment remaining available to Jack from his retirement fund pursuant to the second QDRO. However, he will not receive as high a share of the qualified, tax-deferrable funds as Linda received because of Delta's policy of distributing qualified funds on a first-come, first-serve basis.

¶12 Jack filed for bankruptcy in approximately February 1997. Linda did not file with him. On October 17, 1997, the District Court entered Findings of Fact, Conclusions of Law, and Order concerning temporary child support and maintenance. The court held a

nonjury trial on May 11 and 12, 1998. On September 1, 1998, the court issued Findings of Fact, Conclusions of Law, and Decree of Dissolution. Jack filed a Motion and Brief to Alter and/or Amend Judgment on September 11, 1998. On October 27, 1998, the court entered its Order and Rationale on Motion to Alter and Amend, essentially affirming its previous decree. Jack appeals from the court's decree of dissolution as well as its Order and Rationale on Motion to Alter and Amend.

## ISSUE ONE

¶13 Whether the District Court erred in entering the Qualified Domestic Relations Order?

¶14 In April 1996, as a result of Jack's heart attack and other health problems, Jack began receiving disability compensation from a combination of sources connected with his employment by Delta. Prior to July 30, 1996, Jack had to decide whether to elect to continue on long-term disability, which would have paid him approximately $124,000 per year with additional benefits, or to participate in the Delta Air Lines early retirement program. Jack elected to participate in the early retirement program, submitting his application for early retirement to be effective August 1, 1996. This application resulted in the cessation of disability benefits.

¶15 On September 5, 1996, the District Court issued a QDRO to provide Linda with a portion of Jack's Delta retirement benefits. Delta rejected the initial QDRO. On September 20, 1996, Jack sent a letter to Delta directing Delta to defer his retirement benefits until after his marriage was dissolved. This choice had the effect of leaving the Harkin family with no income as Jack was not receiving either disability or retirement benefits. Linda was without income from September through December 1996.

¶16 On December 18, 1996, in the absence of Judge Curtis, the judge presiding over the Harkins' dissolution, Judge Ted O. Lympus, entered another QDRO for the purpose of providing Linda with a source of income. George Best, Jack's attorney at the time, testified that Linda's attorney presented a proposed QDRO to Judge Lympus which Mr. Best had previously read. Mr. Best also testified that he informed Judge Lympus that the terms of the proposed QDRO had been agreed upon.

¶17 Jack contends that the District Court erred as a matter of law by entering the QDRO dated December 18, 1996. Jack asserts that the court was without authority to enter the order because the parties did not stipulate to the entry of the order in writing nor was a

stipulation on record in open court. Jack claims that the finding that the QDRO was entered with the acknowledgment and agreement of counsel for both parties is without support, and therefore, clearly erroneous. Linda asserts that Jack's attorney at the time, George Best, testified that when Linda's counsel presented the QDRO to the court, Mr. Best informed the court that he approved of the entry of the QDRO.

¶18 In *In re Marriage of Simms* (1994), 264 Mont. 317, 871 P.2d 899, we set forth the rules applicable to agreements regarding the division of marital property. We stated:

> In the case of stipulations and agreements regarding the division of marital property and maintenance, those agreements, to be binding upon the district court, must be reduced to writing and must be found by the court to be not unconscionable.

*Simms, 264 Mont. at 325, 871 P.2d at 904.*

¶19 Pursuant to *Simms*, the District Court had the authority to enforce a written agreement between the Harkins concerning the division of marital property if it found that agreement not to be unconscionable. While the agreement appears to have been reduced to writing, Linda has not directed us to a specific finding of conscionability. However, the District Court also had the authority to enforce the QDRO if it applied the criteria under § 40-4-202, MCA, governing the division of a marital estate, and entered appropriate findings of fact and conclusions of law. *See Simms*, 264 Mont. at 325, 871 P.2d at 904.

¶20 The court considered the statutory criteria and entered appropriate findings of fact and conclusions of law regarding the distribution of Jack's retirement benefits. Section 40-4-202, MCA, requires the court to equitably apportion the marital estate. In apportioning the marital estate, the court shall:

> consider the duration of the marriage and prior marriage of either party; the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, and needs of each of the parties; custodial provisions; whether the apportionment is in lieu of or in addition to maintenance; and the opportunity of each for future acquisition of capital assets and income. The court shall also consider the contribution or dissipation of value of the respective estates and the contribution of a spouse as a homemaker or to the family unit.

Section 40-4-202(1), MCA.

¶21 Regarding the division of the marital estate, including Jack's retirement benefits, the District Court found that "the distribution of the retirement benefits as set forth in the QDRO . . . represents a fair and equitable distribution of the marital estate" given the factors set forth in § 40-4-202, MCA. The court also made findings regarding those factors, including findings concerning the duration of the Harkins' marriage, Linda's occupation, sources of income, employability, and needs.

¶22 Accordingly, we conclude that the District Court was authorized to enter the QDRO because it entered the appropriate findings of fact and conclusions of law given the statutory criteria contained in § 40-4-202, MCA.

## ISSUE TWO

¶23 Whether the District Court erred in dividing the marital estate?

¶24 We review a district court's division of marital property to determine whether the findings upon which the court relied are clearly erroneous and whether the court correctly applied the law. *See In re Marriage of Foreman*, 1999 MT 89, ¶ 14, 294 Mont. 181, ¶ 14, 979 P.2d 193, ¶ 14. If its findings are not clearly erroneous and it correctly applied the law, we will affirm the court's marital estate distributions and marital property valuations unless the court abused its discretion. *See Foreman*, ¶ 14. A district court has broad discretion pursuant to § 40-4-202, MCA, to distribute the marital estate in a manner that is equitable to each party according to the circumstances of the case. *See In re Marriage of Baer*, 1998 MT 29, ¶ 30, 287 Mont. 322, ¶ 30, 954 P.2d 1125, ¶ 30. A court abuses its discretion in a dissolution proceeding if it acts arbitrarily without employment of conscientious judgment or it exceeds the bounds of reason resulting in substantial injustice. *See In re Marriage of Meeks* (1996), 276 Mont. 237, 242, 915 P.2d 831, 834.

¶25 A. Delta Retirement Benefits

¶26 Jack claims that the court abused its discretion because it did not consider the fact that Linda received the majority of the "qualified" funds from Jack's Delta retirement plan. Pursuant to the QDRO, the court awarded Linda 35.385 percent of Jack's Delta Retirement benefits. Upon approval by Delta, Linda received a lump sum benefit in the amount of approximately $419,000 and monthly payments of approximately $2700. Jack testified that the remaining amounts available to him pursuant to the QDRO amount to a $765,118 lump sum payment and a $5467 monthly payment. By letter to Delta, Jack deferred receipt

of his remaining retirement benefits. A Delta representative testified that it was Delta's policy to distribute "qualified" funds-those funds that could be rolled over into another qualified plan without tax or penalty-first. As a result of Delta's policy and Jack's deferral, Linda received the majority of the qualified funds from Jack's retirement plan. Jack also contends that he will be receiving funds that are not as secure as the funds Linda received.

¶27 On the basis of the above facts, we cannot conclude that the District Court's distribution of the retirement funds was so arbitrary as to exceed the bounds of reason resulting in substantial injustice. Rather, it appears that the reason Jack will receive a lower percentage of qualified funds and less secure funds is because he chose to defer his disbursement with the knowledge that Delta disbursed qualified retirement benefits on a first-come, first-served basis. Furthermore, the court attempted to correct for some of the disparity. The District Court requested that Delta change the designation of a portion of Linda's lump sum distribution, or in the event Delta refused, ordered that in regard to future monthly benefits, each party receive a percentage of the remaining qualified funds. Accordingly, we conclude that the District Court did not abuse its discretion in the distribution of the Delta Retirement benefits.

¶28 B. Liabilities

¶29 Jack contends that the District Court abused its discretion by failing to itemize the marital debts which were not extinguished by his bankruptcy and by distributing those debts to him. Jack refers to the following debts which he contends that the court failed to value:

Airline Pilots Association $ 5,000.00

City Service $ 1,861.56

MHESAC 101 $11,168.71

MHESAC 102 $13,059.67

MHESAC 103 $10,828.32

MHESAC 104 $14,400.00

C.K. Rucker $65,000.00

¶30 The District Court found that "there are certain marital debts, fairly minimal in amount, that will not be discharged by Jack through his bankruptcy proceeding, which should be Jack's responsibility to pay." The court concluded that all debts not extinguished by Jack's bankruptcy were Jack's responsibility, including, but not limited to the MHESAC debt secured solely by Jack. In its Order and Rationale on Motion to Alter or Amend, the court further stated that it distributed these debts to Jack because Jack could have met his obligations to his family and assisted his daughter with her college expenses if he had not elected early retirement and then withdrawn his election.

¶31 We conclude that the District Court did not abuse its discretion by not making a specific finding of fact regarding the value of these liabilities. Jack contends that pursuant to our decision in *In re Marriage of Metcalf* (1979), 183 Mont. 266, 598 P.2d 1140, the District Court was required to make complete findings of fact regarding assets and liabilities and by failing to do so, the court effectively prevented us from determining whether the estate was equitably divided. Jack is correct in pointing out that we have generally required district courts to make "complete findings of fact, including assets and liabilities, from which can be established the net worth of the parties." *In re Marriage of Dirnberger* (1989), 237 Mont. 398, 401, 773 P.2d 330, 332. However, "a net valuation by the district court . . . is not always mandatory." *In re Marriage of Walls* (1996), 278 Mont. 413, 417, 925 P.2d 483, 485. Rather, "the test is whether the findings as a whole are sufficient to determine the net worth and to decide whether the distribution is equitable." *Walls*, 278 Mont. at 417, 925 P.2d at 485 (quoting *In re Marriage of Stephenson* (1989), 237 Mont. 157, 160, 772 P.2d 846, 848). We believe that on the facts of this case the District Court's findings are sufficient for us to determine whether the marital estate was distributed equitably.

¶32 It is clear that the court relied on testimony and exhibits submitted by the parties in determining the assets and liabilities of the marital estate and in dividing the value of the estate equitably. As the court noted, as of the date of the dissolution, the only assets in the marital estate were the Delta Retirement Funds, certain items of personal property, stock in JEH, Inc., and the liabilities not discharged by Jack's bankruptcy. Given these facts, we can adequately review the distribution of the estate to determine whether it was distributed equitably, despite the fact that the court did not make a specific finding of fact regarding the extent of the liabilities distributed to Jack.

¶33 We also conclude that the District Court did not abuse its discretion in distributing

those liabilities to Jack. In regard to the $65,000 Jack testified he borrowed from C.K. Rucker, Jack testified that he borrowed the money during the pendency of the dissolution action and the majority of this money went to pay marital estate bills. We note that the only evidence of the existence of this debt and the purposes for which it was expended is Jack's testimony. However, as the court correctly found, this debt was incurred because on August 1, 1996, Jack accepted Delta's offer of early retirement. Upon Jack's election, Delta terminated his disability pay. Jack subsequently deferred receiving his retirement benefits. Jack's voluntary choice to end his disability income and defer his retirement income left himself and his family without a source of income and thus he was forced to incur debt. Accordingly, we do not believe that the distribution of this debt to Jack is so inequitable as to exceed the bounds of reason resulting in substantial injustice.

¶34 Regarding the MHESAC liabilities, the District Court found that there was evidence which indicated that they were secured by Jack and that they may have been incurred after Jack and Linda's separation. The court also found that Jack could have assisted his daughter with college expenses if he had not deferred his retirement benefits. We conclude that the court did not abuse its discretion by distributing the MHESAC liabilities to Jack.

¶35 Regarding the distribution of the Air Line Pilots Association liability as well as the City Services liability, the District Court correctly found that they were minimal relative to the value of the marital estate. We conclude that the District Court did not abuse its discretion in distributing these liabilities to Jack.

¶36 C. Personal Property

¶37Jack contends that the District Court erred in its distribution of the parties' personal property. The District Court distributed the Harkins' personal property in accordance with Linda's proposed distribution because it found that Jack had testified that he agreed with that distribution. The court distributed any personal property not accounted for in Linda's proposal in accordance with Jack's proposal.

¶38 The District Court did not abuse its discretion in distributing the parties' personal property. Jack did in fact testify that he agreed with the distribution proposed by Linda. Jack further testified that Linda's proposal was incomplete in that it did not reflect all of the personal property in the marital estate. He testified that his proposal accounted for the property not reflected in Linda's proposed distribution. The court distributed the property not accounted for in Linda's proposal according to Jack's wishes. We cannot conclude that

a distribution agreed to on the record in open court is so inequitable as to be an abuse of discretion.

¶39 D. Taxes

¶40 Jack contends that the court failed to find that Linda received a $52,239 tax refund. Jack claims that evidence of the refund is found in the uncontroverted testimony of David Finkle. However, Linda testified that although she had claimed a $52,239 refund, she had not yet received it. Furthermore, as the court noted, this refund was generated in part from the automatic withholdings in connection with Linda's lump sum distribution from Jack's retirement fund and that Jack was likely to receive a tax refund when he receives his distribution. We conclude that the District Court did not abuse its discretion regarding the tax implications of the retirement distributions.

¶41 E. Real Property in Maine

¶42 Jack contends that the District Court did not make a specific finding regarding an interest in real property located in Maine. The interest in the property in Maine is accounted for on Jack's proposed property distribution. In its findings of fact, the court stated that property not accounted for on Linda's proposal would be distributed according to Jack's proposal. Jack's proposal recommended distributing this interest to Linda. We conclude that the District Court's findings are sufficiently clear regarding the distribution of the interest in real property located in Maine.

¶43 F. Linda's Delta Retirement Account

¶44 Jack contends that the District Court erred by distributing all of Linda's retirement account to Linda. The District Court found that Linda was entitled to a separate pension from Delta upon her reaching the age of 65 in the amount of $250 per month which reflected Linda's 15-year employment of which she was married for only 6 of those years. The court awarded the entirety of Linda's future retirement benefit to Linda. We do not conclude that this distribution exceeds the bounds of reason resulting in substantial injustice.

¶45 G. JEH, Inc.

¶46 The District Court found that JEH, Inc., a jewelry business established and operated

by Jack during the marriage, was worth $100,000. The court awarded the stock to Jack, but required Jack to make a $50,000 equalizing payment to Linda. Jack has made numerous and conflicting claims about the assets and value of JEH, Inc., both to the District Court below and to us on appeal. First, he testified that JEH, Inc., was worth $92,000. Then, in his Motion and Brief to Alter and/or Amend Judgment he claimed that "the uncontroverted testimony was that JEH, Inc., is worth $10,000" and that court distributed $13,575 in JEH assets to Linda. Now, on appeal, Jack contends that the District Court erred by awarding all of the assets of JEH, Inc., to Linda because, as a consequence, the equity interest in JEH, Inc., which was distributed to him is valueless.

¶47 Given Jack's various allegations regarding JEH, Inc., made during the course of this litigation, it is not clear exactly what his claim is on appeal. Is he claiming that the District Court erroneously valued JEH, Inc.? We note that upon direct questioning by the court Jack testified that JEH, Inc., was worth $92,000. Therefore, any claim that the court's valuation is clearly erroneous fails. Is Jack claiming that the court abused its discretion by distributing all of the assets of JEH, Inc., to Linda and thereby rendering his award of JEH stock valueless? He claimed below in his motion to amend the decree of dissolution that assets in the amount of $13,575 allegedly owned by JEH, Inc., were awarded to Linda. According to his own estimates, he still owns stock in a company with approximately $79,000 in assets ($92,000 value Jack testified to, minus $13,575 in JEH, Inc., assets he alleges were distributed to Linda).

¶48 Whatever the basis of his claim is regarding JEH, Inc., Jack has not developed a consistent record with respect to this claim. We conclude that the District Court did not err in its distribution of the assets and equity of JEH, Inc.

¶49 We affirm the distribution of the marital estate.

## ISSUE THREE

¶50 Whether the District Court erred in awarding maintenance?

¶51 The District Court concluded that Linda was entitled to maintenance in the amount of $750 per month until Jack's child support obligation for the couple's daughter Erica terminates, at which time Jack's maintenance obligation would increase to $1250 per month for a total maintenance period of eight years. The court concluded that because of significant concerns about the security of future maintenance payments due to Jack's

health, Linda was entitled to a maintenance award in the form of a lump sum payment in the amount of $90,253.

¶52 Jack claims that the maintenance award was erroneous because the court did not make findings supported by substantial evidence regarding the factors governing an award of maintenance as listed in § 40-4-203, MCA. Jack also claims that the District Court erred by connecting the maintenance award to child support, providing for an automatic increase of the maintenance award once Jack's responsibility for child support payments for the couple's daughter terminates. Jack maintains that this future increase is a "modification" of a maintenance award which requires actual notice and a finding of changed circumstances. Lastly, Jack contends that the court erred in ordering him to pay maintenance in a lump sum.

¶53 A. Granting an Award

¶54 A district court may grant an award of maintenance only if it first finds that the spouse seeking maintenance lacks sufficient property to provide for that spouse's reasonable needs and is unable to support himself through appropriate employment or is otherwise precluded from seeking employment outside of the home. *See* § 40-4-203(1), MCA; *see also Pfeifer v. Pfeifer* (1997), 282 Mont. 461, 472, 938 P.2d 684, 691. We review a district court's decision regarding maintenance to determine whether the court's findings supporting its decision are clearly erroneous. *See Pfeifer*, 282 Mont. at 473, 938 P.2d at 692.

¶55 The District Court found that Linda did not have sufficient property to meet her reasonable needs. This finding is not clearly erroneous. The court pointed to substantial credible evidence in the record to support this finding. Regarding Linda's reasonable needs, the court noted that Linda's monthly living expenses were set forth in Petitioner's Exhibit 7. Petitioner's Exhibit 7 indicates that Linda's monthly living expenses total $4713. The court stated that these expenses were somewhat inflated in that some of the payments would not recur every month. However, the court also found that Linda's lump sum distribution from Jack's Delta retirement fund was expended to pay taxes, purchase a home for herself and the two children (because the family home had been foreclosed upon), pay attorney fees, purchase vehicles (because the marital vehicles had been repossessed), and pay various other expenses for herself and the parties' minor children. The court observed that because of these expenses, Jack will have a significantly higher retirement investment than Linda. Regarding the sufficiency of Linda's property to meet those needs, the court

found that Linda would be netting approximately $2450 a month from Jack's Delta Retirement fund as well as child support in the amount of $1532 a month.

¶56 The District Court also found that Linda was unable to support herself through appropriate employment. This finding is also not clearly erroneous. In support of this finding, the court observed that Linda had testified that she would need a period of four years to complete a degree and that she hoped to start a business once she received her degree. Linda also had two minor children living with her and had not worked outside the home since 1979.

¶57 We conclude that the District Court's findings regarding Linda's entitlement to maintenance are not clearly erroneous. Therefore, the District Court did not err when it awarded Linda maintenance.

¶58 B. Maintenance Award Amount

¶59 The amount of a maintenance award is determined in accordance with § 40-4-203(2), MCA. Section 40-4-203(2), MCA, provides, in relevant part:

> (2) The maintenance order shall be in such amounts and for such periods of time as the court deems just, without regard to marital misconduct, and after considering all relevant facts including:
>
> (a) the financial resources of the party seeking maintenance . . . *including the extent to which a provision for support of a child living with the party includes a sum for that party as custodian . . . .*

Emphasis added. We review a court's award of maintenance to determine whether the court abused its discretion. *See In re Marriage of Decosse* (1997), 282 Mont. 212, 220, 936 P.2d 821, 825.

¶60 Jack contends that the District Court erred by ordering maintenance payments to increase from $750 per month to $1250 per month once his child support obligation terminates. Jack contends that linking maintenance payments to child support payments is erroneous as a matter of law. Jack also asserts that the increase in maintenance payments is a modification which requires actual notice and a showing of changed circumstances under § 40-4-208, MCA.

¶61 Section 40-4-203(2)(a), MCA, expressly requires a court to consider the extent to which a provision for child support includes a sum for the party seeking maintenance as custodian. Jack has not pointed us to a single case in which we have reversed an award of maintenance because a court considered the amount of child support in reaching its conclusion. We conclude that the District Court did not err by considering the termination of Jack's child support award when it determined an appropriate award of maintenance.

¶62 In regard to Jack's claim that the District Court's award of maintenance violates § 40-4-208, MCA, we conclude that an award of maintenance which increases upon the occurrence of a future event is not a "modification" of a decree requiring actual notice and a showing of changed circumstances. Section 40-4-208(1), MCA, provides that "a decree may be modified by a court as to maintenance or support only as to installments accruing subsequent to actual notice to the parties of the motion for modification." This provision is clearly not applicable to the facts *sub judice* because the court did not modify the terms of its decree of dissolution. The award of increasing maintenance payments *is one of the terms of the decree*, not a subsequent modification of those terms.

¶63 C. Lump Sum Maintenance Award

¶64 We have previously observed that a district court may award maintenance in a lump sum if, "in its discretion, the district court determines that such an award both fulfills the statutory criteria set forth in § 40-4-203, MCA, and best meets the recipient's needs under the particular facts of the case at issue." *In re Marriage of Schara* (1994), 266 Mont. 76, 79, 878 P.2d 908, 910.

¶65 The court awarded maintenance in a lump sum because it had significant concerns about the security of future maintenance payments given Jack's health and inability to sustain gainful employment. The court observed that in the event of Jack's death, his only source of revenue, his monthly retirement benefits, would terminate, and Linda would be dependent upon his estate for her maintenance.

¶66 Jack now contends that the evidence indicates that his health is improving. We note that although Jack did testify that someone associated with his recovery program indicated to him that he was getting better, he also testified that he would soon undergo a surgical procedure that could result in his death due to either a heart attack or hemorrhaging. The District Court's concerns about the state of Jack's health are well-founded. Accordingly, we conclude that the District Court did not abuse its discretion by awarding maintenance

in the form of a lump sum payment.

## ISSUE FOUR

¶67 Whether the District Court erred in awarding attorney fees?

¶68 During the course of the dissolution trial, the District Court admitted Linda's testimony regarding the issue of awarding attorney fees. Linda testified that she had incurred approximately $8000 in fees associated with the bankruptcy action in Washington as well as additional and unnecessary fees associated with her attempt to obtain child support. Linda's attorney then requested that the court allow Linda to submit an affidavit regarding the fees requested. The court stated "it's fine with me to proceed with attorney fees that way. That's the way we typically do it. And certainly, Mr. Scott [Jack's attorney], if we get to that point, we'll have a hearing to determine reasonableness, if you wish." In its Findings of Fact, Conclusions of Law, and Decree of Dissolution, the District Court awarded Linda $20,000 in attorney fees. In making that award, the court stated:

Because of Jack's choices, diminishment of assets, and bankruptcy, Linda has had to pay additional attorney fees. Considering the financial resources of the parties, Jack should be required to reimburse Linda for a portion of her attorney's fees and costs.

¶69 Jack contends that the District Court erred in awarding attorney fees to Linda because the award was not based upon findings or evidence that an award of fees was necessary or reasonable. Jack claims that the facts indicate that an award of fees was not necessary given Linda's ability to pay the rest of her fees. Jack also contends that the court erred in not holding an evidentiary hearing on the issue of awarding attorney fees. Linda simply asserts that there was ample evidence to show that the award was necessary and reasonable and that the District Court informed Jack that if he disagreed with the reasonableness of the award, he could request a hearing.

¶70 We review a district court's award of attorney fees in a dissolution action to determine whether the court abused its discretion. A district court has abused its discretion if its award of attorney fees is not supported by substantial evidence. *See Pfeifer* (1997), 282 Mont. at 465, 938 P.2d at 687 (citations omitted).

¶71 The statute in effect when Linda petitioned the court for separation, § 40-4-110, MCA

(1995),[1] provided:

> The court from time to time, after considering the financial resources of both parties, may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under chapters 1 and 4 of this title and for attorney's fees.

¶72 This Court has held that an attorney fee awarded pursuant to § 40-4-110, MCA (1995), must be reasonable, necessary, and based on competent evidence. *See Pfeifer*, 282 Mont. at 466, 938 P.2d at 687-88 (citations omitted). Moreover, we have stated that the district court must conduct a hearing allowing for "oral testimony, the introduction of exhibits, and an opportunity to cross-examine in which the reasonableness of the attorney fees claimed is demonstrated." *See In re the Marriage of Davies* (1994), 266 Mont. 466, 479-80, 880 P.2d 1368, 1377 (quoting *In re Marriage of Aanenson* (1979), 183 Mont. 229, 236, 598 P.2d 1120, 1124).

¶73 The court's findings do not appear to be supported by substantial competent evidence. Although the court accepted Linda's counsel's offer to submit an affidavit regarding her fee request and the court offered to afford a hearing upon submission of that affidavit if Jack requested one, Linda has not directed us to this affidavit nor have we located it in the record. Also, the hearing regarding an award of fees was never held. From the record in this case as set out above, we are unable to review either the reasonableness or necessity of fees.

¶74 The reasonableness of the amount of the award is unclear. It is not clear how the court arrived at the $20,000 award amount except by reference to the approximately $8000 in fees that Linda testified were incurred as the result of a separate bankruptcy proceeding and some unspecified amount of additional fees incurred by Linda as the result of child support proceedings which Linda claimed were additional and unnecessary and due to Jack's litigation tactics.

¶75 The necessity of the award is also unclear. Although the court stated that it considered "the financial resources of the parties," it is not obvious exactly why the financial resources of the parties *necessitated* an award of fees to Linda. We note that during most of the litigation, Linda was receiving monthly disbursements of approximately $2700 from Jack's retirement funds and Linda received a lump-sum disbursement of approximately $419,000 of which she was able to invest $135,000 in an IRA account. We also note that

the court also awarded Linda generous child support and maintenance awards as well as a $50,000 equalizing payment for JEH, Inc.

¶76 As we stated in *Pfeifer*:

> The court's statement that it considered the parties' financial resources, without more, is an insufficient basis upon which to determine that an attorney fee award is necessary. The court made no other findings that would indicate how a consideration of the parties' respective financial resources dictated an award [of attorney fees].

*Pfeifer, 282 Mont. at 466-67, 938 P.2d at 688.*

¶77 We reverse the court's award of attorney fees and remand in order for the court to receive evidence and conduct a hearing on the reasonableness and necessity of awarding attorney fees.

¶78 The District Court's decree of dissolution is affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.

/S/ JIM REGNIER

We Concur:

/S/ J. A. TURNAGE

/S/ KARLA M. GRAY

/S/ W. WILLIAM LEAPHART

/S/ TERRY N. TRIEWEILER

1. Section 40-4-110, MCA, was subsequently amended. The Compiler's Comments to § 40-4-110, MCA (1997), state that the amendments apply "to proceedings begun after October 1, 1997." (Quoting Section 43, Ch. 434, L. 1997.) Linda filed her Petition for Legal Separation on April 30, 1996.