FILED

01/27/2026

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 25-0287

DA 25-0287

IN THE SUPREME COURT OF THE STATE OF MONTANA

2026 MT 10N

IN RE THE MARRIAGE OF:

BAYLIN DOUGLAS CRAYTHORN,

       Petitioner and Appellant,

  and

ARIA LEIGH BEITLER-WILLIAMS,

       Respondent and Appellee.

APPEAL FROM:   District Court of the Twentieth Judicial District,
In and For the County of Lake, Cause No. DR-23-122
Honorable Molly Owen, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Baylin Douglas Craythorn, Self-Represented, Whitehall, Montana

      For Appellee:

          Aria Leigh Beitler-Williams, Self-Represented, West Jordan, Utah

Submitted on Briefs:  December 3, 2025

Decided:  January 27, 2026

Filed:

_____
          Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Appellant, Baylin Douglas Craythorn (Craythorn or Baylin), appeals from the District Court's order granting the motion of Appellee, Aria Leigh Beitler-Williams (Beitler-Williams or Aria), to set aside a post-decree order granting attorney fees to Craythorn for having to respond to an earlier post-decree enforcement motion filed by Beitler-Williams. We affirm.

¶3 Craythorn's challenge to the fee order at issue requires a background explanation. The parties were married in June 2019, and separated in June 2023. They filed a joint petition for the dissolution of their marriage on November 17, 2023, and neither were represented by counsel. They jointly submitted a standard form Findings of Fact and Conclusions of Law and Final Dissolution of the Marriage Decree (Decree), wherein they filled in and checked appropriate blanks and boxes, along with an "Agreed Proposed Property Distribution." They also jointly submitted an affidavit for entry of a decree of dissolution without a hearing. Accordingly, and upon review, the District Court approved the parties' agreement and entered the decree, which incorporated their proposed property distribution, on November 20, 2023.

¶4     Relevant to this appeal, the Decree granted the marital home to Craythorn. The parties had noted on the decree form that the house was held in both of their names and was subject to a $444,500 mortgage,[1] but they did not select any of the decree form's three pre-stated property disposal options. Instead, a box indicating "I am listing the real property that my spouse and I own" was checked and additional handwriting indicated that Beitler-Williams "has transferred their ownership interest to [Craythorn], and has transferred their mortgage interest to Mary Craythorn, [Craythorn's] mother," apparently for the purpose of releasing Beitler-Williams from any further connection to the property.

¶5     On March 8, 2024, Beitler-Williams filed a motion to Enforce Final Decree and Request for Show Cause that asked the District Court to compel Craythorn to refinance the marital home within 45 days, or that the home be sold, and—bearing on the merits of the original proceeding—that the property distribution should be declared to be unconscionable and she should be reimbursed from the proceeds of the house's sale for her contributions during the marriage. Beitler-Williams asserted that she "felt [she] had no choice" but to sign the property agreement they submitted to the District Court, and that Craythorn's failure to remove her from the home's mortgage and "refusal to refinance the house" had restricted her ability to acquire an auto loan and obtain a reliable vehicle.[2] Craythorn, now represented by counsel, responded by noting that the form settlement

---

[1] The debt section of the decree indicated the balance of the mortgage on the house was $439,000.

[2] It appears the parties also signed a pre-petition agreement to jointly own and maintain the home until it sold, with the parties sharing the payments and costs, but this agreement was apparently abandoned and was not included in the property distribution ultimately proposed to the District Court.

agreement the parties submitted stated that the distribution of marital property was "not unconscionable" and, as a matter of fact, any interest Beitler-Williams would claim to the value of the home would be offset by her share of the mortgage debt. Craythorn also stated that he "does not dispute that [Beitler-Williams] should be removed from the loan on the marital home," but that "the reality is that the home loan process is more timely and complex" than the parties anticipated.

¶6 The court held a show cause hearing on the motion to enforce on June 26, 2024. After testimony was given, the following statements were made:

> BEITLER-WILLIAMS: I submitted this motion to enforce back when Baylin wasn't really making an effort . . . .  And since I have no say in—in getting any equity or anything, aside from getting off the loan, it seems like Baylin's, now that I've submitted the motion to enforce, he's finally making an effort to sell the home.
> I don't really know what else could be done . . . .  But I feel like since I filed this motion to enforce, he's finally making efforts, so I guess I can't ask for much more than that.
>
> THE COURT: I agree.  So when I came into this hearing I thought I was going to rule for Ms. Beitler-Williams and I thought that this property apportionment was not fair and equitable.  But after hearing testimony and seeing exhibits, I do think this property division remains fair and equitable.  It doesn't sound like there is any equity in the house.  And he is doing everything that he can to remove you from the mortgage or alternatively to sell the house.  And so, I think I should hold this matter in abeyance . . . hopefully the house sells.

¶7 The District Court scheduled another hearing for October 30, 2024.  By then, Craythorn's counsel had withdrawn, and the parties testified that Beitler-Williams had been removed from the mortgage, and the marital home had been sold.  However, thereafter, Craythorn filed a motion for attorney fees for the expenses he had incurred to retain counsel to respond to Beitler-Williams' motion to enforce.  He contended Beitler-Williams had

4

failed to abide by the Decree and "caused [Craythorn] to expend thousands of dollars in preparing [the marital home] for sale, with nothing to show for it." Further, Craythorn alleged that Beitler-Williams had initiated the enforcement motion despite knowing the status of the property and had "violated or attempted to violate every agreement that the couple had."

¶8 Beitler-Williams did not respond to Craythorn's motion for attorney fees within the briefing period and, consequently, the District Court, noting that "briefing has run and no Response was filed by [Beitler-Williams]," granted the motion on November 19, 2024. The order did not state an amount of fees, or that a reasonable fee would be determined by the court. Craythorn's motion had requested $4,838.09. Craythorn had writs of execution issued against Beitler-Williams' personal and real property in that amount, plus costs, by the District Courts in Lake and Missoula Counties, and, on February 21, 2025, still proceeding pro se, filed a motion for Beitler-Williams, as a judgment debtor, to appear and answer pursuant to § 25-14-101, MCA.

¶9 On February 24, 2025, Beitler-Williams, pro se, filed a motion to set aside the fee order and to stay the writs of execution. She further asked the court to order the return of an undisclosed amount of funds taken from her bank account pursuant to the writs. In this motion, Beitler-Williams contended that she had moved during the litigation and changed addresses, and was unaware of the requirement to update the court with her new address. She acknowledged that she was aware of the fee motion but did not have counsel and did not respond because of her lack of knowledge and circumstances, and did not receive a copy of the order granting fees. Beitler-Williams contended that her failure to respond

5

constituted excusable neglect pursuant to M. R. Civ. P. 60(b)(1). In her supporting affidavit, Beitler-Williams stated, "[h]ad I been able to respond to the Motion for Attorney's Fees, I would have argued that [Craythorn] should not be entitled to fees when his noncompliance necessitated legal action in the first place." Craythorn argued in response to the motion that Beitler-Williams had notice of his fee motion and that her circumstances did not constitute excusable neglect for failing to timely respond. Further, he objected to Beitler-Williams' contention that his inability to resolve the title issues on the house was a violation of the Decree.

¶10 On March 14, 2025, the District Court entered an order granting Beitler-Williams' motion to set aside the fee order, reasoning that it was "adopt[ing] the reasoning set forth in the Respondent's motion. Upon due consideration, the [c]ourt concludes that Respondent's grounds for relief satisfy the applicable legal standards." Craythorn appeals.

¶11 "The standard of review for a district court's order on M. R. Civ. P. 60(b)(1) . . . is abuse of discretion." *In re Marriage of Remitz*, 2018 MT 298, ¶ 8, 393 Mont. 423, 431 P.3d 338. We have held that a trial court abuses its discretion if it "act[s] arbitrarily without employment of conscientious judgment or exceed[s] the bounds of reason resulting in substantial injustice." *In re Marriage of Hayes*, 2002 MT 281, ¶ 13, 312 Mont. 440, 60 P.3d 431 (citation omitted). M. R. Civ. P. 60 relief from judgment or order exists to ensure the achievement of "substantial justice." *Remitz*, ¶ 11 (citing *Peterson v. Montana Bank, N.A.*, 212 Mont. 37, 45-46, 687 P.2d 673, 678 (1984)).

¶12 Section 40-4-110, MCA, allows the court the discretionary authority to award attorney fees in certain situations. Such an award under this statute must be "reasonable,

6

necessary, and based on competent evidence." *In re Marriage of Harkin*, 2000 MT 105, ¶ 72, 299 Mont. 298, 999 P.2d 969 (citation omitted). In order for an award of attorney fees to be necessary, the court must analyze the moving party's ability to pay fees, the nonmoving party's ability to pay fees, and the parties' collective financial position. *In re Marriage of Salois*, 2025 MT 211, ¶ 10, 424 Mont. 145, 575 P.3d 1003 (citation omitted). Further, we will "uph[old] a fee award when the district court's overall findings and substantial evidence support[] its conclusion," provided the court finds that the award was reasonable, necessary, and based on competent evidence. *Salois*, ¶ 18 (citation omitted).

¶13 Perhaps understandably, Craythorn's arguments are heavily laced with perceived injustices he suffered during the dissolution process, which he offers in support of his claim to an attorney fee award. He notes, among other things, that Beitler-Williams left him without warning, took substantial sums from the couple's accounts, leaving him with little, and "left the property in a state of disrepair," having "initiated, but not completed, multiple projects on the property." However true and difficult these actions may have been, they occurred prior to the parties' joint petition for dissolution and submission of their joint marital agreement to the District Court, which approved it and incorporated it into the Decree. Thus, they are not germane to the post-decree fee order challenged on appeal. Craythorn also argues that the Decree did not even require him to sell the property, and thus he was not in violation of the Decree, and not subject to an enforcement order. He acknowledges, however, that "the decree filed by the parties could have been more clear" in this regard and, indeed, the Decree indicated that "I am listing the property," which implies an intention to sell. Further, the actual thrust of Beitler-Williams' motion was

7

Craythorn's lack of progress on removing her name from the mortgage so that her ability to obtain credit would be restored, which Craythorn's counsel acknowledged was necessary in Craythorn's response to the motion. Selling the house was one possible solution to the title issue, but perhaps not the only one.

¶14 Craythorn argues the District Court abused its discretion by concluding in the set-aside order that Beitler-Williams' failure to timely respond to his motion for fees was premised upon circumstances constituting excusable neglect, and that Beitler-Williams was entitled to the relief. Beitler-Williams answers that Craythorn's "own delay and noncompliance with the decree gave rise to this litigation[,]" thus "[t]he court acted equitably in recognizing [Beitler-Williams'] excusable neglect as a pro se litigant and in preventing unjust enforcement of a fee award that never should have [been] issued." Craythorn contests this view of the proceeding.

¶15 The Decree prepared by the parties stated that Beitler-Williams had already transferred her interest in the property to Craythorn, yet, months later her name remained on the mortgage obligation, thereby continuing to affect her credit. Here, it was not unreasonable for her to seek the court's assistance in obtaining relief on that issue. By the time of the hearing, seven months had passed since the Decree was entered and Beitler-Williams' name was still on the mortgage. At the hearing, the District Court agreed with Beitler-Williams' assessment that, "since I filed this motion to enforce, he's finally making efforts, so I guess I can't ask more than that," but her motion as filed was not without purpose or merit, and the District Court was initially inclined to grant her further relief. The District Court granted fees to Craythorn related to the enforcement motion

because Beitler-Williams had not responded to his request. However, despite there being no specific amount of fees awarded and no determination of a reasonable fee, writs of execution were thereafter issued, and upon reviewing Beitler-Williams' explanation of her circumstances in her motion to set aside, discussed above, agreed with her that Craythorn was not entitled to a fee award for responding to her enforcement motion. Upon review, we cannot conclude that the District Court's determination fell outside the parameters of its discretion.

¶16 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶17 Affirmed.

/S/ JIM RICE

We Concur:

/S/ CORY J. SWANSON
/S/ KATHERINE M. BIDEGARAY
/S/ LAURIE McKINNON
/S/ INGRID GUSTAFSON